(No. 12041.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ISAAC BERGER, Plaintiff in Error.

*Opinion filed June 20, 1918.*

1. CRIMINAL LAW—*what may be proved in a prosecution for keeping house of ill-fame.* In a prosecution for keeping a house of ill-fame or letting rooms for illicit purposes, the practice of prostitution in such house or rooms other than at the time of the letting of the rooms in question, and the bad reputation of those who frequent the place, may be proved, as in such cases guilt must ordinarily be established by circumstantial evidence.

2. SAME—*what conversations in presence of hotel keeper are admissible in prosecution for keeping a house of ill-fame.* Where police officers raid a hotel for the purpose of enforcing the statute against keeping a house of ill-fame, conversations between the officers and the couples arrested there, in the presence of the hotel keeper and undenied by him though of a damaging nature, are admissible against him although they do not expressly charge him with the commission of any offense, where the circumstances show he must have known what law the officers were seeking to enforce.

3. SAME—*when admission may be implied from conduct of accused.* An admission or confession may be implied from the conduct of a party charged with a crime or with complicity therein who makes no denial or explanations when statements are made in his presence affecting him and the circumstances afford him an opportunity to act or speak in reply and where men similarly situated would naturally deny the implied guilt or make explanations or statements.

4. SAME—*when it is not reversible error to refuse to allow counsel to argue.* In a prosecution for the violation of a statute, where a jury is waived and the evidence is heard by the court, the judge should permit both counsel to present briefly their respective views before attempting to decide that case; but it is not reversible error to refuse to allow counsel to argue where no attempt to argue is made until after the judge has stated what his conclusions are to be.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. RUFUS F. ROBINSON, Judge, presiding.

CHARLES HORGAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was found guilty of a violation of section 57 of chapter 38 of the Revised Statutes of this State, providing against keeping or maintaining a house of ill-fame or place for the practice of prostitution or lewdness, or letting a house, rooms or other premises for such purpose. (Hurd's Stat. 1917, p. 960.) The particular charge under the provision upon which the information was based was that plaintiff in error rented or let a room or rooms for the purpose of prostitution, fornication and lewdness. A jury was waived and on a hearing before the judge in the municipal court of Chicago plaintiff in error was found guilty and fined $200 and costs. The Appellate Court affirmed the judgment, and the case has been brought here on writ of error for further consideration.

Plaintiff in error was the proprietor of the New Douglas Hotel, at 3502 Vincennes avenue, Chicago, in August, 1917. About 1:30 o'clock on Sunday morning, August 26, 1917, six police officers of Chicago entered plaintiff in error's hotel and arrested him, and also arrested three couples, men and women, who were occupying rooms in the hotel at that hour. They also arrested another man and woman who, as the evidence tends to show, attempted to enter the building together while the officers were talking with the people already arrested. None of these four couples were married, but the three couples who were in the rooms had registered as man and wife. The evidence tends to show that the couple who were just entering the building were warned away by the colored maid employed in the hotel. These four couples were all questioned, in a general way, by the police in the presence of plaintiff in error, in or just

outside of the hotel office, on the second floor. Each of them stated, in answer to the questions of the police, that they were not man and wife. Plaintiff in error said at the time the police officer was questioning these witnesses that he had no knowledge as to whether these couples were married or whether they were unmarried; that he did not receive them; that they were received and registered by one of his employees. According to the testimony of the police he also stated, after one of the couples had said they were not married, that "he did not care whether they were man and wife just as long as they were registered," apparently meaning that he did not care whether they were man and wife so long as they registered as man and wife. It appears from Berger's testimony that the rooming house contained sixty-five rooms on three floors, and that he had about eighteen permanent roomers at the time of the raid. He denied that he had heard certain statements testified to by the officers as having been made in his presence by the various people who were under arrest, one to the effect that that person had been there before and occupied a room, leaving at two o'clock in the morning; also the statement of one of the women that she had occupied a room there before. It appears, also, that one of the police officers testified that one of these women, who was arrested while occupying one of the rooms, was known to the police as a lewd woman who had frequently solicited men on the streets of Chicago and had been put out of other public rooming houses or hotels by the police because of this. Plaintiff in error denied that he knew these facts as to this woman. Some of the women involved also testified, and their testimony tended more to support plaintiff in error's testimony than it did to contradict him, as to his guilty knowledge of the character of the women in question.

Counsel for plaintiff in error argues earnestly and at length that the evidence of the policemen as to what these men and women said was not admissible even though it

284 — 4

was said in Berger's presence and he did not deny it. We think the testimony on this question is of such a nature that the conclusion is inevitable that what the policemen swore to as to the statements of these men and women was stated in Berger's presence, as testified by them. We think, also, it is clear that he did state that it didn't make any difference whether these couples were man and wife if they were registered as man and wife. This evidence of the police as to this last statement of plaintiff in error does not appear to have been denied by him. Neither can there be any question from this record that plaintiff in error was where he could have seen and heard the colored maid when she was trying to warn away the couple who came in while the police were there.

Most authorities agree that on a prosecution for keeping such a house as this the State may prove the character of the inmates and frequenters of the house, and many courts hold it can prove the reputation of the house. (9 Am. & Eng. Ency. of Law,—2d ed.—533; 9 R. C. L. 225, and cases cited.) The bad reputation of those who visit such a house is also generally held to be, in any view, competent evidence. (1 Wharton on Crim. Evidence,—10th ed.— sec. 261, and cases cited.) While the testimony of these couples when under arrest, as told by the police officers, may not be held conclusive as to plaintiff in error's knowledge of the purpose for which the rooms in his hotel were being rented, it would certainly have a bearing on that question. Without question, the presumption of innocence in a case of this kind must continue, the same as in any other case, until guilt is shown, "but guilt may be shown either by direct evidence, which probably in the greatest number of cases is wholly impracticable, or by circumstances from which, according to the usual laws of reason and common experience, guilt is clearly inferable. When these circumstances are shown the presumption of guilt displaces the presumption of innocence." (*DeForest* v. *United States,*

11 App. Cas. [D. C.] 458.) None of these couples had any baggage with them when they came to the hotel or when arrested. While it is true as argued by counsel for plaintiff in error, that a man and wife might come to a hotel without any baggage and the proprietor could not be expected to turn them away on that account, still it is a circumstance that necessarily has weight as to the guilty knowledge of the proprietor if several unmarried couples, all of them without baggage, are found occupying rooms in his house. No fixed and arbitrary rules can be laid down governing the duties of proprietors of hotels in a great city like Chicago in deciding whether or not to accept as guests men and women who come in couples, with or without baggage. In matters of this kind, as in other matters involving violations of the criminal law, each case must in some measure be decided by its own special facts. The proprietor of a hotel or public rooming house is presumed to have a general knowledge that will guide him, in a large degree, on matters of this kind. It has been held that the proprietor of an establishment of a *quasi* public character is presumed by law to know what takes place in his own establishment, to the extent, at least, of throwing upon him the burden of showing, if the law is violated in the conduct of the place, that it is not his fault. (*Sanders* v. *State*, 74 Ga. 82.) In this last case the court in so holding held that such a rule was in accordance with justice and common sense. In some jurisdictions the conversations of those in the house, even out of the presence of the accused, are competent to show the character of the house. (*State* v. *Toombs,* 79 Iowa, 741; *Herzinger* v. *State*, 70 Md. 278.) Under the holding of this court in *People* v. *Newbold*, 260 Ill. 196, such conversations out of the presence of the accused would not be admissible. We think, however, that under the circumstances of this case these conversations, having, as we have held, taken place in the presence of plaintiff in error, were admissible on the trial.

Counsel for plaintiff in error argues at some length that the conversations were not admissible, under the holdings of this court in *People* v. *Harrison,* 261 Ill. 517, because these statements of the witnesses in answer to questions from the police officers did not charge plaintiff in error with the commission of any crime. There might be some merit in this argument if plaintiff in error could only be convicted by direct testimony, but, as we have already stated, conviction is justified in this case, as in others, not only upon direct evidence but upon circumstantial evidence. The circumstances surrounding plaintiff in error at the time these answers were made in his presence were certainly of such a nature as to plainly indicate to him what violation of the law, as proprietor of the hotel, he was charged with. An admission or confession may be implied from the conduct of the party when charged with a crime or with complicity therein, or when statements are made in his presence affecting him, when the circumstances afford him an opportunity to act or speak in reply and men similarly situated would naturally deny the implied guilt or make explanations or statements. (1 Greenleaf on Evidence,— 16th ed.—sec. 197.) Obviously, plaintiff in error's own statement made at the time, that it did not make any difference whether the couples were married or not if they had registered as man and wife, indicated beyond doubt that he understood the nature of the charge against him. We do not see how anyone can read the evidence in this record without reaching the conclusion that a man who conducted a hotel as the one here in question, must have known that his rooms were being occupied by people who desired to use them for illicit purposes. We do not think any error harmful to plaintiff in error was committed by the trial court in admitting the evidence in question.

Counsel for plaintiff in error further argues that the evidence should have been confined to letting rooms on the night of the raid. By the authorities already cited this

argument is without merit. Under a charge for keeping a house of this nature or letting rooms for illicit purposes the practice of prostitution in such house or rooms may be shown in evidence, within the limitations already stated. See in addition to the authorities already cited, *State* v. *Dufour,* 49 L. R. A. (N. S.) 792; *People* v. *Russell,* 110 Mich. 46; *Price* v. *State,* 96 Ala. 1.

Counsel for plaintiff in error further insists that the trial court erred in not permitting counsel to argue the case before the decision was rendered. The evidence on this point in the record tends to show that at the close of the testimony the trial judge, without waiting for any argument, commenced to review the evidence and to give his views thereon; that counsel for plaintiff in error did not attempt to argue the case until the trial judge had stated what his conclusions were to be, and then counsel asked to present his views, and the trial judge, somewhat summarily, said that he did not want to argue the case with him. If the hearing had been before a jury and the court did not think the evidence was of such a nature as to justify directing a verdict, then, necessarily, the right of an argument before the case was submitted to the jury should be rigidly upheld; and we think, even when the judge himself, without a jury, is hearing the case, he should permit both counsel to present, briefly, their respective views before attempting to decide the case. In hearings of this kind, however, long arguments by counsel cannot be permitted in all cases. The good judgment and sound discretion of the trial judge must largely control in such matters. Having in mind the circumstances surrounding this hearing and the question as to the time when counsel for plaintiff in error first asked to present his views to the court after the evidence was submitted, we do not think reversible error was committed in not permitting the argument of counsel at the time he requested it.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*