People of the State of Illinois, Defendant in Error, v. Morris Levin, Plaintiff in Error.

Gen. No. 39,494.

414

Opin-
ion filed November 16, 1937.

HARRINGTON & McDONNELL, of Chicago, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and BLAIR VARNES, Assistant State's Attorneys, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

By this writ of error defendant, Morris Levin, seeks to reverse a judgment of the municipal court sentencing him to the house of correction for a term of one year upon the finding of the court that he was guilty of being the keeper of a house of prostitution.

The information upon which Levin was tried charged that November 7, 1936, he "was then and there unlawfully and knowingly keeper of a certain house of prostitution and assignation; and place for the practice of fornication, prostitution and lewdness; such house then and there being situated at 1659 W. Monroe street, in the City of Chicago, County of Cook, State of Illinois," in violation of § 162, ch. 38, sec. 57, Ill. Rev. Stat. 1937; Jones Ill. Stats. Ann. 37.128.

The record discloses that the State presented evidence that on November 7, 1936, about 10 p. m., police officers Frankowski and Rozonski, dressed in civilian

clothes, knocked at the door of "a house" located at 1659 West Monroe street, and were admitted by Levin, who asked them if they wanted to see the "girls"; that when they told him "Yes," he took them into a room where they remained five or six minutes and then led them into another room and told them to ask for "Dorothy"; that when Rozonski asked for "Dorothy," one Elizabeth Creig said "come this way" and took him into a bedroom where she disrobed and laid down on the bed nude except for a brassiere; that when the other officer, Frankowski, was led into the second room with Rozonski, one Nina Gold said "come on in" and took him into a bedroom where, after going through certain preliminaries and collecting two dollars from the officer, she pulled up her dress or gown exposing herself to the chest and laid down on the bed; that the officers did not have sexual intercourse with the girls, but placed them under arrest; that while they were still in the bedroom waiting for the girls to dress the officers heard a commotion in the kitchen; that upon opening the door of the room he was in, officer Frankowski saw five or six men who had been sitting in the kitchen running out on the side; that he "grabbed" the defendant, Levin, as he was trying to get out through the side door; that by pre-arrangement officer Hackett knocked at the Monroe street entrance door of the hotel 12 minutes after officers Frankowski and Rozonski had entered and while the latter were in the bedrooms with the girls; that Levin came to the door and opened it "on a chain"; that when he saw who it was he slammed the door and started to run; and that in about two minutes officer Frankowski came back with Morris Levin in tow and opened the door.

The State presented further evidence that on May 20, 1936, officers Hackett and Parkenson visited the same premises and were admitted by Levin, who

told them to go upstairs where a number of girls were sitting in a room; that the officers were taken into separate bedrooms by two of the girls, who each, after requesting and receiving two dollars from the officer with her, disrobed and laid down on the bed; that neither of these officers had intercourse with the girls but placed them under arrest; that when officer Parkenson rang the front door bell on the occasion of his visit to the premises with officer Hackett, May 20, 1936, Levin admitted them after he had "looked through a little piece of glass in the door and opened the door on a chain," satisfying himself that they wanted "to see the girls."

Levin testified in his own behalf that he was in the restaurant business and that he went to the hotel on the evening of November 7, 1936, to look up some people who lived there; that he was drinking coffee and conversing in the kitchen with Elizabeth Creig and Nina Gold when "we heard a buzzer ring and the clerk at that place was not there . . . I am in there very often so when they ring the bell I walk over to the door, I seen these two officers right there at that time. I didn't know that they were officers . . . naturally when I asked them what they wish, so the first thing they ask me for a room . . . I walked away from them, I didn't know what happened. Somebody opened the door . . . they drawed a gun—this officer—. . . and they arrest me"; and that "they only asked me for a room" and nothing was said about girls. On cross-examination he testified that he had not been in the restaurant business for four or five years prior to November, 1936, but that he was doing odd jobs for a living; that he went to the hotel the night of November 7, 1936, to see one Jack Hayes, who, he said, lived there; that he did not know either Elizabeth Creig or Nina Gold and had never seen them before; that he went into the kitchen, where the two

girls were drinking coffee and "sat there for a while," conversing with them; that he had gone to the hotel to see Hayes a number of times prior thereto, but never visited him in his room, the location of which he did not know; that when he was there before he met Hayes in the kitchen, which was "the reception room" of the hotel; that he had seen officer Parkenson before; that he was arrested by him at the hotel on another night when the witness had gone there to see Mr. Hayes; and that he does not know who owns or runs the hotel.

Nina Gold and Elizabeth Creig testified that they were in the kitchen drinking coffee when the officers came in with their guns drawn and arrested them. They denied that they went into bedrooms with the officers, asked or received any money from them, talked about intercourse or undressed at any time in the presence of the officers. The two girls were arrested along with Levin and separate informations were filed, charging them with being inmates of a house of prostitution. As heretofore stated, Levin was charged with being keeper of a house of prostitution. The three defendants waived jury trials and were tried together.

The defendant Levin contends (1) that the trial court erred in proceeding with the trial of the three defendants upon separate informations, charging them with separate and distinct offenses; (2) that the court erred in admitting incompetent evidence offered by the State; and (3) that the evidence failed to prove that he was guilty of the offense charged.

As to the defendant's first contention that the action of the trial court in trying the separate informations against him and the two girls together constituted prejudicial error, it is sufficient to say that no objection was interposed by Levin to the procedure followed, and since no question was raised in the trial

court as to such procedure it cannot be urged here for the first time. If Levin had objected to being tried with the defendants named in the other informations and requested a separate trial, the court would undoubtedly have granted his request. But Levin acquiesced in the procedure and his complaint at this time comes too late. In any event there is nothing in the record to show that Levin was prejudiced by being tried with the other defendants. The defendants named in the three separate informations were arrested in the same house and practically at the same time. The offenses charged are of the same class. All three defendants were represented by the same counsel and submitted to the joint trial without objection. While the precise question of the right of a trial court to try together two or more defendants charged with misdemeanors in separate informations has apparently not heretofore been considered or decided by any court of review in this State, no sound reason is advanced or suggests itself why a joint trial of persons charged with separate misdemeanors of the same class is improper where the defendants acquiesce in such joint trial.

It is next claimed that the trial court erred in admitting in evidence the testimony of police officers Frankowski and Rozonski as to their conversations and experiences with the defendants Nina Gold and Elizabeth Creig in the respective bedrooms out of the presence of Levin. No objection was offered to any of their testimony. But even though objection had been made the testimony of the police officers as to what occurred between them and the girls was admissible to show the character of the premises, and their testimony as to their conversations with the girls was admissible against the latter, who were also on trial.

It is also claimed that the testimony of police officers Hackett and Parkenson as to their conversations and

experiences on May 20, 1936, with girls other than the defendants Gold and Creig in the same premises was improperly admitted in evidence. After officer Parkenson had completed his testimony relating to his visit to this place on May 20, 1936, defendants' counsel stated: ''I move that be stricken, it was not in the presence of any of the defendants,'' and the court ruled: ''All of what occurred may stand.'' The court's ruling in effect sustained defendants' motion to strike Parkenson's testimony as to his conversations with the then inmates of the house. Officer Hackett's incompetent testimony as to conversations out of the presence of Levin with the inmates of this house on the occasion of his visit to same on May 20, 1936, was permitted to be received in evidence, but viewed in. the light of all the other evidence in the record we think that the court's error in this regard was harmless and had no prejudicial effect on the outcome of the trial. The testimony of officers Hackett and Parkenson as to the occurrences between them and the girls in these premises on May 20, 1936, as well as between them and Levin on the same occasion, was competent to show not only the character of the house but Levin's identity and connection therewith. To prove Levin guilty of the offense charged in the information against him, it was incumbent upon the prosecution to show that the premises in question were operated as a house of prostitution and that he was keeper of same. In discussing the competency of evidence as to prior occurrences under almost identical circumstances in *Parker v. People,* 94 Ill. App. 648, the court quoting from *Cadwell v. State,* 17 Conn. 467, said at p. 652: ''So, in the present case, we think that the circumstances that certain persons of lewd and dissolute character had, before the time in question, been permitted by the accused, habitually to resort to his house for the purpose of prostitution, fur-

nished a legitimate ground to infer, that when it was subsequently allowed to be resorted to, by the same persons and those of a similar character, it was for the same purpose. The testimony being relevant to prove a material fact in the case, was properly received.''

In a prosecution for keeping a house of ill fame, the practice of prostitution in such house other than at the time charged may be proved, as in such cases guilt must ordinarily be established by circumstantial evidence. (*People v. Berger,* 284 Ill. 47.)

As to the contention that the prosecution was improperly allowed to show the reputation of the defendant Levin, it is only necessary to say that no attempt was made to prove his reputation. What did occur was that one of the police officers made an irresponsive reply derogatory to Levin in answer to the question: ''Now, what is his business?'' The answer was immediately stricken on the motion of the State's attorney. The question was proper, the irresponsive answer of the witness was immediately stricken and the fact that it was made cannot be considered prejudicial error.

While it is insisted that the evidence failed to prove Levin guilty beyond a reasonable doubt of the offense charged, it must be conceded that the evidence is conclusive that the ''hotel'' at 1659 W. Monroe street was operated as a house of prostitution, both on and prior to the date alleged. The only remaining question is whether it was sufficiently shown that Levin was the keeper of such house of prostitution. In cases of this character guilt may be shown either by direct evidence, which in most cases is wholly impracticable, or by circumstances from which according to the usual laws of reason and common circumstances guilt is clearly inferable. (*DeForest v. United States,* 11 App. Cas. [D. C.] 458; *People v. Berger, supra.*) We have set forth the testimony of all the witnesses somewhat fully

and from all the facts and circumstances in evidence we are impressed as the trial court must have been that the guilt of Levin was established beyond a reasonable doubt.

We are of the opinion that the record contains no reversible error and the judgment of the municipal court is therefore affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.