THE PEOPLE *ex rel.* THOMAS J. DIFANIS, State's Attorney of Champaign County, Plaintiff-Appellee, *v.* LEONARD FUTIA *et al.*, d/b/a Tender Touch Leisure Spa, Defendants.—(ROBERT L. McINTOSH *et al.*, Defendants-Appellants.)

Fourth District   No. 14778

Opinion filed December 5, 1978.

1028

CRAVEN, J., dissenting.

James M. Langan, of Urbana, for appellants.

Thomas J. Difanis, State's Attorney, of Urbana, *pro se* (Joseph D. Pavia, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Robert McIntosh and Roy McIntosh appeal from the order of the trial court finding described premises to be a public nuisance under the provisions of "An Act regarding places used for purposes of lewdness, assignation, or prostitution * * * " (Ill. Rev. Stat. 1975, ch. 100½, pars. 1 through 11 inclusive), and enjoining them from maintaining the use of such property as a nuisance, enjoining the use of the building for any purpose for the period of one year, and ordering the sheriff to remove and sell the furnishings which the court shall determine had been used for purposes of prostitution.

The trial court granted a stay of the order pending appeal upon the filing of a bond and permitting a use of the premises to be approved by the court.

The action was originally filed against Roy McIntosh, Leonard Futia, and Frank Futia, doing business as Tender Touch Leisure Spa. The public records disclose that Roy McIntosh is the holder of legal title to the real estate. The testimony is that he holds title for the benefit of his brother, Robert, who asserts all beneficial interest in the property. Following the entry of a preliminary injunction on November 18, 1977, Robert McIntosh filed the petition to intervene as holder of the beneficial title on November 28, 1977. He was permitted to so intervene and hereafter will be referred to as the defendant, McIntosh.

The record shows arrests for prostitution made on the premises on June 17, 1977, July 30 and November 17, 1977. The testimony establishes that

patrons were admitted through a locked door upon the payment of a fee or admission in the sum of $25. One undercover officer was told by the individual who received the fee and opened the door that such fee entitled the patron to a room, a girl, and to a massage, and that the fee was $35 for a girl and a private room. The manager, as well as one or more of the girls, advised that the latter worked for tips and received no part of the admission fee. McIntosh testified to the same effect.

Upon admission, patrons went to a small waiting room and chose a girl from amongst those present, or those who came into the room. Two of the rooms used were equipped with massage tables and three were furnished with beds. The testimony of several witnesses is to the effect that while administering the massage the girls wore no clothes, or very thin negligees. The massage was given while the patrons were naked.

Defendant urges that the sanction of injunction is not justified for the reasons: (1) That the prostitution in June and July occurred while he was lessor of the premises and that it is not alleged or shown that he had knowledge of the prostitution; (2) that one act of prostitution occurring after he resumed control is insufficient to charge that the premises were a nuisance as a house of prostitution; and (3) that upon learning of the arrests for prostitution he made a good faith effort to prevent the nuisance.

Robert McIntosh testified that he leased the premises to Leonard Futia effective June 9, 1976, and that upon learning of the arrests for prostitution on the premises terminated the lease on August 12, 1977. He further testified that he had lived on the premises described as a one-story frame building since August 12, and that he had forbidden the women employees to engage in prostitution and had told them that he would prosecute any of them who did so. He testified that he employed all of the women who worked on the premises, but that he did not pay them any wages.

The record does not necessarily support the proposition that McIntosh was an innocent landlord, wholly disassociated from the operation of the Tender Touch. The record shows that McIntosh and Leonard Futia received a warranty deed dated September 19, 1975, as tenants in common of the premises. This deed was recorded on May 3, 1977. By quit claim deed dated and acknowledged on June 9, 1976, and recorded on December 8, 1976, Leonard Futia conveyed to Roy McIntosh. By quit claim deed dated October 14, 1976, acknowledged December 14, 1976, and recorded June 6, 1977, Robert McIntosh conveyed to Roy McIntosh.

The record contains an agreement between Futia and McIntosh dated June 9, 1977, which recites that "they have until recently conducted a business on the aforesaid real estate under the name of Tender Touch * * * " but that they have decided to terminate and sever their business

relationship. McIntosh agreed to lease the premises for $400 per month for a period of one year and assigned his right in the business to Futia. The agreement also recites that McIntosh assigns all personal property to Futia, and Futia assigned all rights in the fixtures to McIntosh. This agreement also recites that McIntosh opened a massage parlor under the name of Pleasure Island in Champaign and Futia waives all claim to any interest in that business and to the profits, funds, or property of Tender Touch which had been transferred to Pleasure Island.

The series of transactions supplies substantial evidence that McIntosh was aware of the nature and quality of the business of operating a massage parlor. Despite the terms of the purported agreement whereby the furnishings were assigned to Futia, there is testimony that in November 1977, the furnishings on the premises appeared to be the same as those observed upon the occasion of the arrests in June and July.

Upon the issue of want of knowledge of the acts of prostitution, the trial court noted that in addition to the fact that McIntosh lived upon the premises from August to November, the method of operation remained the same as during the period of the alleged lease to Futia, *i.e.*, patrons were admitted through a locked door upon a payment of the same fee, were advised that the girls worked for tips and that the women were described as masseuses while naked, or in transparent negligee.

Section 5 of "An Act regarding places used for purposes of lewdness, assignation, or prostitution * * * " (Ill. Rev. Stat. 1977, ch. 100½, par. 5) provides, in part:

> "No injunction may issue against an owner, nor may an order be entered requiring that any building or apartment, or any place be closed or kept closed, if it appears that such owner and his agent have in good faith endeavored to prevent such nuisance."

McIntosh argues that his testimony that he made a good faith effort to prevent the nuisance by prohibiting the women from engaging in prostitution is unrebutted. Eiden, a part-time manager, gave some corroboration to the fact of the statements by McIntosh.

While no witness could testify that McIntosh did not make such statements to the women employed, the equally unrebutted evidence of the method of operation and his own statement that he paid no wages to the persons he hired may be weighed against that testimony. He does not, in fact, testify that he did anything more than make the statement to the women, nor does he state that he took any further additional action to prevent prostitution.

The statements of the facts concerning the operation of the establishment may be considered in weighing the credibility of his testimony.

■■ McIntosh contends that it was error to permit testimony of the

undercover police officers as to conversations with the women employees prior to the several arrests concerning the furnishing of services other than that of massage and payment therefor. The objection is that the statements were not made in defendant's presence. His argument relies upon *People v. Newbold* (1913), 260 Ill. 196, 103 N.E. 69, a criminal prosecution. The facts in that case are significantly distinguishable in that *Newbold*, the defendant, operated a hotel. A detective met two street walkers outside of the hotel and accompanied them into it for a drink. One invited the detective upstairs for purposes of prostitution. The court held that the conversation was inadmissible against the defendant as it did not show that the defendant permitted prostitution. In that case, there was no evidence that the women were employees of defendant, working inside a locked building which could be entered only upon the payment of a substantial admission charge. It is not contended that the women working at the Tender Touch were tenants of McIntosh or operated independently of his employment. It is apparent that the conversation between McIntosh's masseuses and the undercover officers concerning the acts other than massage and prices were a part of the practice of prostitution. In *People ex rel. Crowe v. Ludwig* (1930), 258 Ill. App. 268, the court adopted the authorities holding that the statements of inmates of houses of prostitution are admissible as tending to show defendant's knowledge of the disorderly character of a place. In *Newbold*, the court did state that the material matter to be proved was the manner in which the house was conducted. The testimony at issue was made by McIntosh's employees during the course of the conduct of the business for which they had been hired. See also *People v. Levin* (1937), 292 Ill. App. 413, 11 N.E.2d 224.

■■ Section 3 of "An Act regarding places used for purposes of lewdness, assignation, or prostitution * * * " (Ill. Rev. Stat. 1975, ch. 100½, par. 3) includes the language:

> "At all hearings upon the merits, evidence of the general reputation of such building or apartment or of such place, of the inmates thereof, and of those resorting thereto, shall be admissible for the purpose of proving the existence of such nuisance."

We conclude that the provision is designed to enlarge by statute the kind of evidence which is admissible and is not intended to restrict or bar admissibility of other evidence concerning the management and operation of the business.

Defendant urges that but one act of prostitution was shown during the period of August 12 and November 18, 1977, and citing *People v. Van Scoyk* (1960), 20 Ill. 2d 232, 170 N.E.2d 151, argues that such quantum of evidence is insufficient to determine that the place was a house of prostitution. The holding in *Van Scoyk*, however, is dependent upon the

fact that there was no other evidence, testimonial or circumstantial, which proved the use of the premises. The record here shows otherwise.

Defendant urges that it was error to permit evidence concerning masturbatory massage as such does not come within the meaning of prostitution. It is unnecessary to consider the argument upon this fragment of evidence as there is otherwise sufficient evidence of actual prostitution to affirm the trial court's exercise of discretion.

McIntosh urges that the injunction has the effect of depriving him of his property without due process of law. This argument appears to be founded upon his prior argument that he had no knowledge of the use of the premises for purposes of prostitution. The sum of the record does not support such position while by his testimony he purported to terminate the Futia lease when he learned of the acts of prostitution. The factor of knowledge was clearly present in August 1977. He also undertook to show that he had made a good faith effort to abate the nuisance. The trial court found that McIntosh had not made a good faith effort to abate the nuisance and such finding is not contrary to the manifest weight of the evidence.

Upon this issue defendant relies upon the opinion of the Supreme Court of Louisiana in *Gulf States Theatres v. Richardson* (La. 1973), 287 So. 2d 480. That opinion was directed to first amendment issues of obscenity as a public nuisance. That court expressly determined that such issues were not analogous to actions concerning the abatement of the nuisance arising from the operation of a house of prostitution.

In *People ex rel. Thrasher v. Smith* (1916), 275 Ill. 256, 114 N.E. 31, the supreme court determined that the statute in question did not deprive the defendant of property without due process of law. That opinion pointed out that the statute was a valid exercise of police power to protect public morals and that the proceedings were not summary but, as in this case, the defendant appeared, presented evidence and was heard upon the issue. That opinion also noted that the statutory provision in section 5 of "An Act regarding places used for purposes of lewdness, assignation, or prostitution * * * *" (Ill. Rev. Stat. 1975, ch. 100½, par. 5), providing that no injunction shall issue if the owner makes good faith effort to abate the nuisance, would encompass the situation where an owner had no knowledge of the fact of the nuisance. An innocent owner is further protected by the provision for vacation of the decree where he gives security for the discontinuance of the nuisance. The court held, that by reason of the several provisions there was no deprivation of the property without due process.

As this opinion was completed, the State's Attorney filed a motion alleging that the building, declared to be a nuisance, had been sold at judicial sale and that a judicial deed had been delivered and recorded.

The motion prayed that that portion of the decree which restrained "all other persons from using the building located on the premises known as 901 East Main Street, Urbana, Illinois, for any purpose for a period of one (1) year" be vacated as a cloud on the title of the purchaser. That motion was allowed by order of this court and that decree was to that extent modified.

Mr. Justice Craven concludes that by reason of such modification of the decree the appeal becomes moot and should be dismissed. The majority of the panel concludes that the decree as modified should be affirmed.

The decree as modified is affirmed.

REARDON, P. J., concurs.

CRAVEN, J., would dismiss the appeal.