Argued March 19, affirmed August 20,
reconsideration denied September 20,
petition for review denied November 20, 1979

## STATE ex rel HAAS,
### *Respondent,*
#### *v.*
## CLUB RECREATION AND PLEASURE et al,
### *Appellants.*

### (No. A 7802-02280, CA 11302)

599 P2d 1194

Marvin S. Nepom, Portland, argued the cause and filed the briefs for appellants.

Frederick Lenzser, Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was Harl Haas, Multnomah County District Attorney, Portland.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

ROBERTS, J.

**ROBERTS, J.**

Defendants appeal from an order and decree of the trial court finding that they had maintained a nuisance by establishing, maintaining, using and occupying certain premises for lewdness, assignation and prostitution. Suit was brought by the state pursuant to ORS 465.110 through 465.180 which provide for the abatement of certain nuisances. Defendants raise many challenges to the statutory abatement scheme, several of which merit our discussion here, and challenge the sufficiency of the evidence as to one of the trial court's findings of fact. We affirm.

Defendant Club Recreation and Pleasure operated the subject business which was known as the "Pleasure Palace." Defendant Tidyman purchased the real property involved in this suit by a 1972 contract of sale. On September 7, 1977 he assigned his interest in the subject property to defendant Swan Management Company for $10. The assignment was not recorded.

For membership and program fees, the Pleasure Palace offered programs of nude dancing, reading and saunas to its customers. In September of 1977, after a Portland Police Bureau vice officer had seen a full page magazine advertisement for the Pleasure Palace depicting explicit sexual contact, an undercover police officer visited the establishment. After paying the membership and program fees, he contracted with an individual employe for the performance of a sex act in exchange for money. This scenario was repeated by other police officers on several different dates; in each case the employe was arrested.

The state brought suit to have the premises declared a nuisance and the nuisance enjoined pursuant to ORS 465.110 and 465.120 which provide:

> "Whoever establishes or maintains any place used for the purpose of lewdness, assignation or prostitution or any other immoral act, or a place where pregnancies are terminated in violation of ORS 435.415, 435.425 and 435.455 is guilty of maintain-

[559]

ing a nuisance. The place where such lewdness, assignation or termination of pregnancies is conducted or carried on and the contents of such premises are declared a nuisance and shall be enjoined and abated as provided in ORS 465.120 to 465.180." ORS 465.110.

"Whenever a nuisance exists under ORS 465.110, the district attorney shall or any taxpayer of the county may maintain a suit in equity in the name of the state to perpetually enjoin such nuisance, the persons conducting or maintaining the same, and the owner, lessee or agent of the building or ground upon which the nuisance exists." ORS 465.120.

Defendants filed a demurrer raising, *inter alia,* a variety of constitutional challenges to the civil nuisance abatement statutes. The demurrer was overruled. After a trial to the court, the trial judge held that defendant Club Recreation and Pleasure had established, maintained, used and occupied the premises for lewdness, assignation and prostitution, that defendant Swan Management Company was lessee of the premises, that defendant Tidyman owned the premises, and that the activities complained of constituted a public nuisance. The land and the buildings were ordered "permanently enjoined as a place in or on which to conduct" the nuisance complained of and each of the defendants was permanently enjoined and restrained from conducting, maintaining, using or occupying, or permitting the use or occupancy of the premises or any premises in Multnomah County for prostitution.[1] The building was ordered closed for any use for one year and the contents and movable property in the building were ordered removed and sold. ORS 465.150.[2]

---

[1] While the trial court's findings of fact state that the premises were used for lewdness, assignation and prostitution, the abatement order names only prostitution in its statement of the use to be enjoined.

[2] ORS 465.150 provides:

"(1) If the existence of the nuisance is established in a suit under ORS 465.120, an order of abatement shall be entered as a part of the judgment in the case. This order shall direct:

Citing *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), defendants first contend that although ORS 465.110 is a civil statute, its purpose and effect are to control criminal activities and impose criminal sanctions without providing constitutional safeguards afforded criminal defendants such as the rights to a jury trial and to have guilt proved beyond a reasonable doubt. Defendants point out that maintaining a place of prostitution is punishable as a crime, ORS 167.012,[3] and argue that by using the civil statute, the state is denying the defendants the rights

"(a) Removal from the building or place of all fixtures, furniture, instruments, appliances, medicines, drugs, contents or movable property used in conducting the nuisance.

"(b) Sale of the property removed in the manner provided for the sale of chattels under execution.

"(c) The effectual closing of the building or place against its use for any purpose, and so keeping it closed for a period of one year, unless sooner released.

"(2) No person shall break and enter or use a building, erection or place so directed to be closed.

"(3) For removing and selling the movable property, the officer shall be entitled to charge and receive the same fees as he would for levying upon and selling like property for execution. For closing the premises and keeping them closed a reasonable sum shall be allowed by the courts."

[3] ORS 167.012 provides:

"(1) A person commits the crime of promoting prostitution if, with intent to promote prostitution, he knowingly:

"(a) Owns, controls, manages, supervises or otherwise maintains a place of prostitution or a prostitution enterprise; or

"(b) Induces or causes a person to engage in prostitution or to remain in a place of prostitution; or

"(c) Receives or agrees to receive money or other property, other than as a prostitute being compensated for personally rendered prostitution services, pursuant to an agreement or understanding that the money or other property is derived from a prostitution activity; or

"(d) Engages in any conduct that institutes, aids or facilitates an act or enterprise of prostitution.

"(2) Promoting prostitution is a *Class C* felony. (Emphasis supplied.)

they would have had if prosecuted under the criminal statute.

In *Brown* the Supreme Court was called upon to decide whether the legislature had successfully decriminalized the first offense of driving under the influence of intoxicants by calling it a "traffic infraction" rather than a "traffic crime." The court in *Brown* noted that the offense involved arrest, detention, a possible fine of up to $1000 and entry of conviction upon the defendant's driving record, as well as collateral consequences such as suspension of the driver's license, imprisonment for non-payment of the fine and elevation of any subsequent DUII charge within five years to a traffic crime.

In the abatement proceeding before us there is no possibility of incarceration. The *Brown* court noted that this factor alone would not decide whether or not a proceeding was criminal or civil in nature, but stressed its importance among the factors to be examined.

The abatement scheme does not provide for a fine,[4] nor does it require anything to be entered on a criminal record. At most, a defendant will pay the costs for the sale and removal of personal property used in conducting the nuisance, ORS 465.150(c)(3) or, if he chooses and the judge is satisfied as to his good faith, he will secure a bond allowing him to keep the premises open during the year they would have been closed upon condition that the nuisance not be reinstated. ORS 465.180.[5]

---

[4] Defendants point to the fact that violation of any injunction granted under the abatement statutes is a contempt of court and subjects the violator to a fine of up to $1000 or imprisonment of up to six months (ORS 465.160 and 465.990) as indicative of the punitive intent of the abatement scheme. However, these possible punishments are for contempt of court and not for maintaining the nuisance. They, therefore, are not factors to be considered in weighing the possible punitive intent of the abatement procedure.

[5] ORS 465.180 provides:

"If the owner or lessee of the premises appears and pays all costs of the proceeding, and files a bond with sureties to be approved by the

The Court of Appeals of Tennessee in analyzing a similar statute concluded

"The statute imposes no penalty upon the owner, nor does it act retrospectively, its whole purpose is prospective, having for its sole object and aim, the prevention, by injunction, of a continuation of the illegal use of the property. * * *" *State Ex Rel. Webster v. Daugherty,* 530 SW2d 81, 86 (WD Tenn App 1975).

The Court of Appeals of New York came to a like conclusion in examining its statute which, like ours, provides for closing the premises for all purposes for one year unless a bond is posted.

"* * * The provision that the court shall direct the effectual closing of the building for a year is not a forfeiture nor a penalty. It is imposed not because the owner of the premises has committed an offense, but because under his ownership a nuisance has been created by a person suffered to occupy the premises. It constitutes an appropriate means of definitely and completely ending the nuisance. Its character is established by the provision that, if the owner, by filing a bond in the value of the property, gives assurance that 'he will immediately abate said nuisance and prevent the same from being established, or kept therein within a period of one year' (§ 343-v), the court may, when satisfied of the good faith of the owner, cancel the order of abatement." *People ex rel Lemon v. Elmore,* 256 NY 489, 177 NE 14, 16 (1931).

We similarly conclude that rather than circumventing the criminal statute, the civil abatement statute serves an entirely different purpose, *i.e.* that of providing prospective equitable relief from continuation of the nuisance. *See* Annot., 75 ALR 1298 (1931).

clerk in such sum as the court may deem necessary, not to exceed the full value of the property to be ascertained by the court, or in vacation, by the clerk of the court, conditioned that he will immediately abate said nuisance and prevent the same from being established or kept therein within a period of one year thereafter, the court, or in vacation, the judge, may, if satisfied of his good faith, order that the premises which have been closed under the order of abatement be delivered to the owner or lessee and that said order of abatement be canceled so far as it may relate to said property. If the bond is given and costs therein are paid before judgment and order of abatement, the suit shall be thereby abated as to said building and owner only."

## II

Defendants next contend that the abatement proceedings authorized by ORS chapter 465 are confiscatory in nature and as such amount to a taking of defendants' property without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. ORS 465.150 (*see* n 1) provides that if existence of a nuisance is established, an abatement order shall be entered as part of the judgment and shall direct that the premises be closed for all purposes for one year, unless sooner released, and that personal property used in maintaining the nuisance be sold.

The owner of the real or personal property can seek cancellation of the order upon a showing "that with reasonable care and diligence he could not have known of the illegal use." ORS 465.155. Even where the owner was aware of the illegal conduct, he can request that the property be released to him upon the payment of costs and the filing of a bond to secure that the nuisance not be reinstated. ORS 465.180. Where personal property is sold, the proceeds, less costs, are recoverable by the owner. ORS 465.170.

While the owner may be temporarily deprived of the use of the real property and will permanently lose the use of personal property used for conducting the nuisance, the state has a valid interest in prohibiting the illegal use of property and the above-listed safeguards prevent the deprivation from amounting to an unconstitutional taking. *Accord, People ex rel Difinis v. Futia,* 65 Ill App 3d 1027, 383 NE2d 763 (1978); *The People v. Smith,* 275 Ill 256, 114 NE 31 (1916); *Pompano Horse Club et al., v. State of Florida,* 93 Fla 415, 111 So 801, 807, 52 ALR 51 (1927).

## III

Defendants further contend that ORS 465.155 unconstitutionally shifts the burden of proof to the defendant. ORS 465.155 provides that the owner of

any real or personal property closed or restrained by an abatement order pursuant to ORS 465.150 may

> "* * * appear at any time between the filing of the complaint and the trial and show cause why the court should cancel or refrain from issuing any decree or orders as against him. Such owner, in order to obtain such relief, must *prove to the satisfaction of the court that he is the lawful owner of said property and, further, that with reasonable care and diligence he could not have known of the illegal use of his property.*" (Emphasis supplied.)

■ ■ ORS 465.130[6] places the burden of proof on the plaintiff by requiring a showing in the complaint or by affidavit that a nuisance exists. There is no requirement that the plaintiff prove knowledge on the part of the owner in order to show that an abatable nuisance exists. ORS 465.155 makes available to the defendant an affirmative defense at any stage of the proceedings prior to trial by which he may show that he had no knowledge of the nuisance and in this way avoid those parts of the abatement order which would be personal to him, *i.e.,* the selling of personal property or the order that he may not use real property for *any purpose* for a year. Defendant has the burden of going forward with the evidence as to this affirmative

---

[6] ORS 465.130 provides in relevant part:

"(1) No preliminary injunction or restraining order shall issue without notice, but when such order is prayed for in the complaint and it appears from the facts shown by affidavits or by the complaint that a nuisance exists and tha the public interest and good morals require its prompt abatement, the court or judge thereof shall make an order fixing the time for the hearing of such application not less than three nor more than five days after service of notice on the defendant. Upon such hearing the court shall inquire into and dispose of the matter and for that purpose may receive evidence in the form of affidavits, oral or documentary testimony.

"(2) If it appears to the satisfaction of the court that such nuisance exists and that public morals and good order require that it be promptly abated, the court shall issue the preliminary injunction as prayed for."

In this case no preliminary injunction was issued. The trial judge, upon agreement of the attorneys, heard all of the evidence in the case and then issued a final judgment and abatement order, rather than holding a separate hearing on a preliminary injunction.

defense; the burden of proof as to establishing the existence of the nuisance is not affected.[7]

## IV

Defendants next contend that ORS 465.110 does not permit the application of the abatement scheme to places maintained for prostitution.

ORS 465.110 states in relevant part:

"Whoever * * * maintains any place used for the purpose of *lewdness, assignation or prostitution or any other immoral act, or a place where pregnancies are terminated* * * * is guilty of maintaining a nuisance. The place where such *lewdness, assignation* or termination of pregnancies is conducted or carried on and the contents of such premises are declared a nuisance and shall be enjoined and abated as provided in ORS 465.120 to 465.180."

Defendants contend that the legislature specifically excluded the word "prostitution" from the second sentence of the statute and did not intend the abatement procedures to apply to prostitution.

In *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 364 P2d 627 (1961), the Supreme Court stated:

"The insertion of words inadvertently omitted or the alteration of the language of a statute by a court is a power always cautiously `exercised and never employed unless it can be clearly seen that to do so is necessary to effectuate the legislative intent. * * *" 228 Or at 160.

In this case to construe the statute as urged by the defendants would lead to an absurd result. We do not believe it was the legislative intent to carefully name those activities which constitute nuisances and then provide a remedy for only some.

---

[7] We note that this issue is not, in any event, of constitutional proportion since the United States Supreme Court has held that "outside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." *Lavine v. Milne,* 424 US 577, 47 L Ed 2d 249, 256, 96 S Ct 1010 (1976).

■ We, therefore, view the omission of the word "prostitution" from the second sentence as an oversight and hold that the abatement proceedings are intended to apply to places used for prostitution.

## V

■ Defendant further contends that the words "lewdness" and 'assignation' have no definite meaning and are void for vagueness under the due process clause of the Fourteenth Amendment to the United States Constitution. In construing the statute, we look to the natural and obvious meaning of the words. *State ex rel Nilsen v. Hemstreet,* 7 Or App 474, 478, 491 P2d 1185 (1971). Lewdness is defined as "gross indecency so notorious as to tend to corrupt the community's morals." Black's Law Dictionary 1052 (rev 4th ed 1968). An assignation is "an appointment of time and place for a meeting especially for illicit sexual relations." Webster's Third New International Dictionary, 132 (1976). We find that these terms are not unconstitutionally vague.[8] *Accord, State ex rel. Webster v. Daugherty, supra; Hensley v. City of Norfolk,* 216 Va 369, 218 SE2d 735 (1975).[9]

## VI

Finally, defendants claim that there was insufficient evidence to prove that defendant Tidyman was owner of the property and that, even if he were the

---

[8] We have previously held that the term "lewd" is not unconstitutionally vague as used in ORS 472.180(5). *Palm Gardens, Inc. v. OLCC,* 15 Or App 20, 31, 514 P2d 888 (1973). That statute reads in relevant part:

" 'The commission may cancel or suspend any license granted if it finds:

" '(5) That the licensee maintains a noisy, lewd, disorderly or insanitary establishment or has been supplying impure or otherwise deleterious beverages or food.' "

[9] Defendants also challenge certain language in ORS 465.130 (*see* n 5) as unconstitutionally vague, as well as claiming that that statute violates due process requirements because it does not require a finding of "irreparable injury" before allowing a preliminary injunction to issue. We decline to reach these challenges because no preliminary injunction was issued in this case (*see* n 5).

[567]

owner, there was insufficient evidence to show that he knew of the lewdness, assignation and prostitution on the premises.

■ We agree with the trial court that defendants had not, by the unrecorded assignment to defendant Swan Management for a sum of $10, given up ownership of the subject property.

■ As to defendants' second contention, nowhere in the statutory scheme is actual knowledge on the part of the owner required in order to prove existence of and to abate the nuisance. ORS 465.110 provides that a place used for prostitution is a nuisance per se. "Common fame" of the premises as a house of prostitution is all that is required to establish the existence of the nuisance. ORS 465.140. ORS 465.120 provides for permanently enjoining the owner from maintaining the nuisance and ORS 465.150 provides for closing the building for one year for any purpose. Neither statute requires the owner to have knowledge of the prohibited activity in order for the court to order abatement. Instead, as discussed above, the owner may raise his lack of knowledge as an affirmative defense in order to avoid those parts of the abatement order which would be personal to him. Defendants did not do so. ORS 465.155.

We conclude that the trial court acted correctly in issuing the abatement order.

Affirmed.