669 P.2d 113

STATE of Arizona, Plaintiff-Appellant,

v.

William A. HENDERSON and R. Christine Henderson, husband and wife, Defendants-Appellees.

No. 1 CA–CIV 5905.

Court of Appeals of Arizona, Division 1, Department D.

June 14, 1983.

Rehearing Denied Aug. 4, 1983.

Review Denied Sept. 20, 1983.

Thomas E. Collins, Maricopa County Atty. by Philip W. Messinger, Deputy County Atty., Phoenix, for plaintiff-appellant.

Steven H. Schneider, Phoenix, for defendants-appellees.

## OPINION

HAIRE, Presiding Judge.

This is an appeal from a denial of injunctive relief sought by the state pursuant to A.R.S. §§ 12–801 to 12–810, Abatement of Bawdy Houses. In dismissing the complaint with prejudice and denying the state's request for an order of abatement, the trial court expressed its disapproval of the investigatory techniques used by the state. On appeal the state contends that the trial court's action was an abuse of discretion. The facts giving rise to this litigation are as follows.

At trial three deputy sheriffs testified about visiting appellees' massage parlor where they were able to solicit sex from employees. None of the deputies actually engaged in sex. Two civilian witnesses, recruited by the Sheriff's Department, testified about visiting the massage parlor where they also solicited and engaged in sexual activities with employees. The money used to pay for these activities was provided by the Sheriff's Department.

The trial court presented three questions to the advisory jury:

"1. Has the Plaintiff proved by clear and convincing evidence that the [appellees' premises] are used for the purpose of or wherein or upon which acts of prostitution are held or occur?

"2. Other than sex acts solicited by Sheriff's deputies or their informants, is there clear and convincing evidence that the [appellees' premises] are used for the purposes of or wherein or upon which acts of prostitution are held or occur?

"3. Based upon the evidence in this case, should the Court enter an order closing [appellees' premises]?"

The jury answered questions 1 and 3 "yes" and question 2 "no." Upon reviewing the evidence, the trial court concurred that the only clear and convincing evidence of prostitution occurring on appellees' premises in-

volved acts solicited by the deputy sheriffs or their recruited informants.

The court then severely criticized the state's procedures in investigating and presenting its case and proceeded to deny the order of abatement and to dismiss the complaint, as follows:

"The record in this case shows that the State had it within its power to prove or disprove the allegations through the owners of the premises and the employees of the business. During the course of this litigation, the State served a search warrant on the premises and arrested all the employees and these Defendants (owners of the premises) and charged all of them with crimes of varying natures. The criminal proceedings all terminated before trial of this matter. Never did the State subpoena any of these people for sworn testimony under penalty of perjury—or force them to claim the protection of the constitutional right against self-incrimination and then consider granting immunity as a material witness. Instead, the State chose to pay two civilians to secure evidence. One civilian volunteered because he 'just loves sex' and received from $1,200.00 to $2,400.00 tax money over a period of less than one year for the specific purpose of purchasing sex of his choice. The other civilian received from $800.00 to $900.00 over a shorter period of time for the same purpose. Neither of these men was ever given any medical examination; neither was given more than a perfunctory background check; no efforts were ever made to verify either of their accounts of what they did with the money nor the accuracy of their reports.

"Without the testimony of the three deputies and the two civilians, the jury found there was no clear and convincing evidence that the premises were used for prostitution .... and indeed there was no such other evidence.

"The State asks this Court's assistance in abating a problem which, under the evidence presented, itself has created through the use of taxpayer's money.

This Court will not lend its power to such a contrived scheme."

We first note that our review of an order denying injunctive relief is to determine whether the trial court has abused its discretion. *See American Credit Bureau v. Carter,* 11 Ariz.App. 145, 147, 462 P.2d 838, 840 (1969). Although the trial court did not specify particular legal principles relied upon, it is clear that the court found insufficient evidence to warrant injunctive relief by *disregarding* the testimony of the deputies and civilian witnesses, as opposed to finding their testimony lacking in credibility.

There is no support in the record for the trial court's statement that the state has "created" the problem which it seeks to abate. This is not a situation where the state through its police has corrupted otherwise innocent individuals through special inducements. Appellees' counsel suggests that the investigatory methods used by the state constitute "unclean hands" so as to require denial of equitable relief.

This argument was raised in a very similar case in which an Illinois appellate court reviewed the denial of a motion *in limine* to preclude testimony relating to sexual activities engaged in by volunteers recruited by the state to patronize prostitutes. *See People ex rel. Difanis v. Boston,* 92 Ill.App.3d 962, 48 Ill.Dec. 302, 416 N.E.2d 333 (1981). In *Difanis,* defendant contended that the state's conduct in recruiting and directing agents to engage in illegal sex acts was so outrageous as to constitute a violation of fundamental due process. The *Difanis* court rejected that contention. Other courts have recognized the availability of this theory as a defense. *See, e.g., Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978); *People v. Isaacson,* 44 N.Y.2d 511, 378 N.E.2d 78, 406 N.Y. S.2d 714 (1978).

Like the court in *Difanis,* we do not consider the state's conduct in this case so outrageous as to justify the court's denying

the order of abatement or dismissing the complaint with prejudice. The deputies and civilians did not originate the scheme by which the prostitution occurred. Rather, they participated in a preexisting ongoing enterprise. The employees readily discussed available sexual services and engaged in sex acts with the civilians with no reluctance. Our supreme court has sanctioned the use of informers or decoys in apprehending and prosecuting criminal defendants. *See, e.g., State v. Gortarez,* 98 Ariz. 160, 402 P.2d 992 (1965); *Hoy v. State,* 53 Ariz. 440, 90 P.2d 623 (1939). Furthermore, in this case the state presented other evidence including sex-oriented magazines and contraceptive devices found on the premises to establish the nature of the activities occurring there. Two neighbors also testified concerning the reputation of the massage parlor.

Because we find no basis upon which the trial court could properly reject the testimony of the deputies and civilians, we must conclude that the trial court abused its discretion. As the responses of the advisory jury indicated, the state presented clear and convincing evidence through the rejected testimony that appellees' premises were used for prostitution. Consequently, the court should have issued the order of abatement.

The judgment of the trial court is reversed and the matter is remanded for proceedings consistent with this decision.

EUBANK and MEYERSON, JJ., concur.