**SPENARD ACTION COMMITTEE,**
Appellant and Cross–Appellee,

v.

**LOT 3, BLOCK 1, EVERGREEN
SUBDIVISION, Appellee and
Cross–Appellant.**

Nos. S–5758, S–5797.

Supreme Court of Alaska.

Aug. 25, 1995.

Rehearing Denied Sept. 28, 1995.

Allen M. Bailey, Law Offices of Allen Bailey, Anchorage, for Appellant and Cross–Appellee.

James D. Gilmore and Brian M. Doherty, Gilmore & Doherty, Anchorage, for Appellee and Cross–Appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

RABINOWITZ, Justice.

Spenard Action Committee (SAC) instituted an action for abatement of a public nuisance and injunctive relief against Lot 3, Block 1, Evergreen Subdivision (Lot 3), alleging that The Chateau, a massage parlor and escort service located on the property, was operating as a house of prostitution. The superior court denied relief based on its conclusion that SAC had not shown that a public nuisance existed at the time of trial.

On appeal, SAC first argues that the superior court should have established as a matter of law, as a sanction for Lot 3's alleged discovery violations, that The Chateau was a house of prostitution. Second, SAC argues that the superior court erred in concluding that the public nuisance must be shown to exist at the time of trial. Third, SAC argues that the superior court erred in determining the proper burden of proof, and in excluding certain evidence. And fourth, SAC argues that it is a public interest litigant and that the superior court's award of costs and attorney's fees to Lot 3 was therefore improper.

On cross-appeal, Lot 3 argues that the superior court erred in awarding SAC $12,000 in costs and attorney's fees as a sanction for Lot 3's discovery violations. In addition, Lot 3 argues that the superior court erred in allowing police officers to testify as experts.

## I. FACTS AND PROCEEDINGS

SAC is a non-profit Alaska corporation organized for the purpose of discouraging prostitution in the Spenard area of Anchorage. SAC's activities include the investigation of suspected houses of prostitution and the implementation of a "camera watch" program in which volunteers observe and attempt to identify individuals who enter or leave these alleged houses of prostitution.

In October 1987, the Vice Unit of the Anchorage Police Department conducted a raid on The Chateau. The police seized a number of items from the premises including 4,752 Rolodex cards with the names of, and information about, The Chateau's customers. Following the raid, L.H., an employee of The Chateau, was charged with assignation,[1] and Mary Elstad, the owner of The Chateau, was charged with owning and operating a house of prostitution. The raid resulted in only one conviction. A jury found L.H. guilty of assignation, and the district court imposed a suspended imposition of sentence for one year. L.H.'s conviction was subsequently set aside. Elstad was acquitted of the charge against her.[2]

A few days after the raid SAC filed an action against a number of defendants, including Lot 3, for abatement of public nuisances and injunctive relief.[3] In its complaint, SAC alleged that The Chateau was using Lot 3 "for purposes of lewdness, assignation, prostitution, or other immoral acts." Lot 3 answered, and discovery commenced.

In furtherance of its discovery efforts, SAC subpoenaed Sergeant Mark O'Brien of the Anchorage Police Department for deposition and commanded him to bring the Rolodex files that the police had seized during the October 1987 raid. In October 1988, SAC served Elstad with a similar subpoena which again commanded production of the Rolodex files.[4] Lot 3 moved for a protective order to prohibit SAC from discovering this evidence. The superior court denied Lot 3's motion in November 1988, but allowed Lot 3 to submit specific items to the superior court for an *in camera* review. Lot 3 subsequently submitted the Rolodex files to the superior court with a motion requesting that the superior court find all information in the Rolodex files, other than the names of The Chateau's customers, to be constitutionally protected. Following its *in camera* review, the superior court ruled that the name, address, telephone number, employer data, driver's license number, and social security number of each customer should be produced, but that any other information was constitutionally protected.

Both SAC and Lot 3 petitioned this court for review of the superior court's order.[5]

1. Assignation is "the making of an appointment or engagement for prostitution or an act in furtherance of such appointment or engagement." A.M.C. 8.14.010. Assignation is punishable by a fine of up to $5,000 and imprisonment for not more than one year. A.M.C. 8.14.020; 8.50.010(A)(7).

2. The record also contains evidence of a 1986 police undercover operation at The Chateau during which a Chateau employee was arrested for assignation. However, the Municipality exercised its discretion under Alaska Criminal Rule 43(a) and dismissed the charge.

3. The superior court severed SAC's claims against other properties. Default judgments were entered against some of the properties after severance, and the claims which were severed and not defaulted were stayed pending appeal.

4. The record contains no information on precisely when the police returned the Rolodex files to

Elstad. In the criminal proceeding against Elstad, the district court excluded the files from evidence as the fruit of an illegal search and seizure. The police retained custody of the files until the disposition of the proceeding, which was scheduled for trial in September 1988. At some point, the police returned the files to Elstad.

5. Neither party has designated the petitions or their supporting memoranda as part of the record on appeal. However, in its motion to the superior court for a stay pending the outcome of the petition, Lot 3 stated its position that "the documents in their entirety are protected from disclosure and discovery by the constitutional right to privacy afforded by the Alaska Constitution to the patrons whose names and other information are contained in the documents." In a motion to the superior court for reconsideration, SAC stated its position that the additional infor-

This court denied Lot 3's petition for review, and responded to SAC's petition for review as follows:

> 1. The petition for review is granted.
>
> 2. The order of the superior court dated December 7, 1988, ruling that all information contained in the two rolodexes and one receipt book is protected by the constitutional right to privacy is reversed in part.
>
> 3. The information on the aforesaid documents relating to customer sexual preferences should be produced as such information is relevant to the petitioner's argument that the establishment is used for purposes [of] prostitution. The customers' privacy interests can be protected by blanking out their names and other identifying information on the copies of the documents which are produced.

*Spenard Action Committee v. Lot 3, Block 1, Evergreen Subdivision,* Alaska Supreme Court Order No. S–3140 (Apr. 7, 1989); *Lot 3, Block 1, Evergreen Subdivision v. Spenard Action Committee,* Alaska Supreme Court Order No. S–3118 (Apr. 7, 1989).

Counsel for Lot 3 construed this order to mean that Elstad must produce photocopies of the cards with information about the customers' sexual preferences, but that she could blank out the customers' names and addresses. Counsel for Lot 3 advised Elstad in conformity with this interpretation. Accordingly, when counsel for SAC requested production of the cards themselves, counsel for Lot 3 responded that the cards need not be produced. After further discussions between counsel for both parties revealed that they disagreed as to the meaning of this court's orders, Lot 3's counsel suggested that they informally approach the court clerk and ask whether there had been some confusion concerning the orders. Counsel for SAC did not respond to this suggestion.

In July 1989, Zachary Thorderson, a friend of Elstad's fiancee, was staying at Elstad's home. Elstad and Thorderson averred in affidavits that Thorderson asked Elstad about the Rolodex files after seeing them in the closet of the room where he was sleeping.

According to the affidavits, Elstad had explained what these files were, that they were involved in this litigation, and that eventually she would have to blank out the names and addresses on the cards and produce the sexual preference information. Thereafter, while Elstad was away from home for an extended period of time, Thorderson removed the Rolodex cards, blanked out the names and addresses, and then returned the cards to the closet without telling Elstad what he had done. In their affidavits, both Elstad and Thorderson state that Elstad did not direct or request Thorderson to blank out the names and addresses.

SAC filed a motion for an order directing Lot 3 to show cause why it should not be held in contempt for violating this court's April 1989 orders by failing to produce the Rolodex files. The superior court granted SAC's motion. After conducting hearings, the superior court issued an order relating to discovery. The superior court found "a reasonable basis for confusion in interpretation by the parties" of this court's April 1989 orders. The superior court construed the orders to require that Elstad produce two sets of Rolodex cards: one set containing the names, addresses, telephone numbers, driver's license numbers and social security numbers of The Chateau's customers, but with all information about sexual preferences and practices blanked out; and another set with information about the customers' sexual preferences and practices, but with all other information blanked out. Lot 3 then filed a petition for review to this court seeking review of the superior court's discovery order, but this court denied the petition. *Lot 3, Block 1, Evergreen Subdivision v. Spenard Action Committee,* Alaska Supreme Court Order No. S–4002 (July 23, 1990).

Elstad averred in her affidavit that in approximately January of 1991 she retrieved the Rolodex files from the closet and discovered for the first time that Thorderson had blanked out the names and addresses. Lot 3 subsequently produced photocopies of the blanked-out cards. At some time afterwards,

---

mation sought—notations pertaining to a customer's sexual preferences—was not protected under the right to privacy. The superior court denied SAC's motion.

Elstad gathered the Rolodex cards into brown paper bags and placed them in her kitchen. Her fiancee, without checking with her to find out what should be done with the contents of the bags, threw them into the garbage.

Thereafter, SAC filed a motion pursuant to Alaska Civil Rule 37(b) for entry of an order establishing that The Chateau operates as a house of prostitution and precluding Lot 3 from offering proof to the contrary. The superior court ordered Elstad to show cause why she should not be held in contempt of court for failure to respond to the court's discovery order. The superior court then issued an order regarding Elstad's alleged discovery violations. The superior court denied SAC's motion for an establishment-preclusion order on the ground that SAC failed to demonstrate that the information on the Rolodex cards was unavailable through any other source. However, the superior court also concluded that Elstad had been "so incredibly careless with the business records ordered produced that her carelessness rises to the level of being intentional or wilful failure to comply with the court's order compelling discovery of those business records." The superior court then ordered Lot 3 to pay SAC's attorney's fees from the day that SAC first subpoenaed the police to produce the Rolodex files to June 19, 1991, when SAC filed its records of actual costs and attorney's fees incurred in respect to this discovery issue. Thereafter, the superior court entered an order awarding $12,000 in attorney's fees to SAC for Lot 3's discovery violation.[6]

At trial, one of the police officers who participated in the October 1987 raid on The Chateau testified that in his opinion the premises were a place where prostitution had just occurred, but that he had formulated no opinion as to whether The Chateau was a house of prostitution. Another officer who had participated in the raid testified that in his opinion The Chateau was operating as a

house of prostitution at the time the raid was carried out.

At the bench trial Elstad testified that she warned any person who worked at The Chateau that if prostitution occurred on the property, the parties who engaged in prostitution would be terminated immediately. When L.H. was charged with assignation in 1987, she was immediately fired. Similarly, Elstad terminated another individual who had been arrested in 1986 for assignation, but against whom the charge had been subsequently dropped. In addition, signs were posted on the premises alerting patrons that The Chateau did not permit prostitution. The superior court also heard testimony that The Chateau was licensed by the Municipality of Anchorage as a physical culture studio, and that the Municipality had never rejected The Chateau's yearly applications for a license or for renewal.[7]

After each side presented its evidence, the superior court articulated a number of oral findings. The superior court concluded that "in October 1987 The Chateau was a business that included prostitution as one of its primary services." However, recognizing that the case did not come to trial until January 1993, approximately five years after SAC had filed its complaint, the superior court also found that SAC had not shown that The Chateau had been operated as a house of prostitution since that time:

> The evidence shows no offers of sex for money by Chateau employees after October 1987, although the business makes approximately the same amount of money as it did in 1987.
>
> . . . .
>
> After consideration of all of the evidence, I find that the ... evidence is insufficient to prove, even by a preponderance, that The Chateau has been operated as a house of prostitution at any time after 1987. Although the evidence presented is

---

6. Lot 3 moved for reconsideration of the judgment, arguing that the superior court should have deducted from the award the amount of actual fees that were unrelated to the discovery of the Rolodex cards. The superior court granted the motion for reconsideration, but sustained the judgment for $12,000.

7. The superior court also heard testimony that the Municipality would reject a license or renewal application if the police department believed that an establishment was being operated as a house of prostitution.

sufficient to create suspicion, it does not support a ... factual or legal conclusion to that effect.

....

Alaska Statutes 09.50.170 to 240 authorize a citizen to bring an action to enjoin an existing nuisance.... However, neither injunction nor abatement is authorized ... unless the nuisance presently exists. The evidence in this case is insufficient to show that a nuisance exists on The Chateau premises.[8]

Lot 3 then filed a motion seeking an award of $77,818 in attorney's fees. SAC opposed the award, arguing that it was a public interest litigant. The superior court denied SAC public interest litigant status and awarded Lot 3 $25,000 in attorney's fees and $3,782 in costs.

SAC now appeals and Lot 3 cross-appeals from the superior court's final judgment.[9]

## II. DISCUSSION

### A. Whether the Nuisance Must Exist at the Time of Trial

In its findings of fact, the superior court concluded in part that "in October 1987 The Chateau was a business that included prostitution as one of its primary services." However, the superior court also concluded that SAC had not shown that The Chateau had operated as a house of prostitution since that time and at the time of trial. The superior court further concluded that neither an injunction nor abatement is authorized under AS 09.50.170–.240 unless the nuisance "presently exists."[10] Because SAC failed to prove that a nuisance presently exists, the superior court denied SAC's request for an injunction and order of abatement. On appeal, SAC argues that the superior court erred because AS 09.50.170–.240, specifically AS 09.50.210, only requires that the nuisance be shown to exist at the time the complaint is filed. In response, Lot 3 argues that these statutes require that the nuisance be shown to exist at the time the trial is held.

Thus, we must determine whether AS 09.50.170–.240 requires that a nuisance be shown to exist at the time the complaint is filed or at the time the trial is conducted.[11] We hold that AS 09.50.170–.240, specifically AS 09.50.210, requires that a nuisance be shown to exist at the time the complaint is filed rather than at the time of trial. Requiring that the nuisance in question be shown to exist at the time of trial would frustrate the

---

**8.** The superior court subsequently issued written findings of fact and conclusions of law that paralleled its oral findings.

**9.** The rulings at issue in this appeal were made by Judges Hunt and Shortell. Judge Hunt issued the establishment-preclusion order and awarded $12,000 in attorney's fees against Lot 3. Judge Shortell ruled on the meaning of "exists," the exclusion of L.H.'s conviction, the admission of the police officers' expert testimony, and SAC's status as a public interest litigant. Judge Shortell also held that SAC had not met the preponderance of the evidence standard, but declined to determine the proper burden of proof.

**10.** Subsequently amended, AS 09.50.170 provided as follows:

A person who erects, establishes, continues, maintains, uses, owns, or leases a building, structure, or other place used for the purposes of lewdness, assignation, or prostitution or any other immoral act is guilty of maintaining a nuisance, and the building, structure, or place, or the ground itself in or upon which or in any part of which the lewdness, assignation, or prostitution is conducted, permitted, or carried on, continues or exists, and the furniture, fix-

tures, and other contents constitute a nuisance and may be enjoined and abated.
AS 09.50.180 provides as follows:
When there is reason to believe that a nuisance as defined in AS 09.50.170–09.50.240 exists, the attorney general shall, or a citizen may, bring an action to perpetually enjoin the nuisance, the person maintaining it, and the owner, lessee, or agent of the building or group upon which the nuisance exists.
Subsequently amended, AS 09.50.210 provided in part as follows:
Upon judgment that a nuisance exists, an order of abatement shall be entered directing the removal from the building or place of the fixtures, furniture, and movable property used in the nuisance and their sale in the manner provided for the sale of chattels under execution. The order shall also direct the closing of the building or place against its use for any purpose for a period of one year unless sooner released.

**11.** The interpretation of a statute presents a question of law to which this court applies its independent judgment, adopting the rule of law that is most persuasive in light of precedent, policy, and reason. Zsupnik v. State, 789 P.2d 357, 359 (Alaska 1990).

underlying purpose of the above noted statutes. Such a holding would invite defendants in nuisance suits to evade liability by voluntarily abating the nuisance between the filing of the complaint and the date of trial. Then, after the threat of trial has passed or the trial has been held, the defendant could resume the offensive activity with impunity. In addition, by enacting AS 09.50.170–.240, the Legislature expressed its specific intent "to suppress houses of lewdness and prostitution, and to prevent persons from maintaining or conducting such houses...." *Territory v. House No. 24*, 7 Alaska 611, 615 (1927).[12] Thus, we construe these statutes in a manner to avoid frustrating their remedial purpose.

Our interpretation of AS 09.50.170–.240 is supported by decisions from other jurisdictions. Several courts in other states have suggested that a nuisance need not be shown to exist at the time of trial. In *King v. Commonwealth ex rel. Smith*, 194 Ky. 143, 238 S.W. 373 (1922), the defendant argued that the trial court should not have issued a permanent injunction against prostitution on his property because he voluntarily abated the nuisance after the suit had commenced. *Id.* 238 S.W. at 377. The court rejected this argument stating that the trial court "had a broad discretion to grant or withhold the injunctive remedy sought by the commonwealth." *Id.* The court added that it was "satisfied that [the trial court] wisely granted the permanent injunction," as "the perpetual injunction was necessary in this case because of the nature of the business enjoined and the likelihood of it reviving under cover as soon as the stay of the court is withdrawn." *Id.* And in *People ex rel. Bradford v. Burch*, 46 Cal.App. 391, 189 P. 716, 718 (1920), the California Court of Appeals considered an action under the Red Light Abatement Law and stated that a nuisance must be shown to exist at the time of the commencement of the action. However, the court also stated that such an action should be dismissed when a nuisance has been voluntarily abated in good

faith before a complaint is filed. *Id.; see also People ex rel. Van de Kamp v. American Art Enters., Inc.*, 33 Cal.3d 328, 188 Cal.Rptr. 740, 743 n. 10, 656 P.2d 1170, 1173 n. 10 (1983). Similarly, in *Coty v. Ramsey Associates, Inc.*, 149 Vt. 451, 546 A.2d 196, 201 (Vt.), *cert. denied*, 487 U.S. 1236, 108 S.Ct. 2903, 101 L.Ed.2d 936 (1988), the court held that a pig farm constituted a nuisance despite the fact that the owners abated the nuisance before the trial began. And finally, in *State ex rel. Miller v. Anthony*, 72 Ohio St.3d 132, 138–139, 647 N.E.2d 1368, 1373 (1995), the Ohio Supreme Court recently held that a nuisance need not be shown to exist at the time of the abatement hearing, concluding that such an interpretation would be "unnecessarily restrictive."

■ However, a court should have the discretion to refuse to issue an injunction or an order of abatement if the defendant has voluntarily abated the nuisance after the filing of the complaint, depending on the good faith of the defendant and the circumstances of the case. For example, in *Commonwealth ex rel. Funk v. Miehl*, 258 S.W.2d 493 (Ky. 1953), the court affirmed the denial of an injunction against a public nuisance because the nuisance had been voluntarily abated after the filing of the complaint. To this effect, the court explained:

> One fact always to be considered in the granting or refusal of injunctive relief is whether or not there is any reasonable necessity for the injunction.... [W]here the abatement has continued for a long period of time and the circumstances are such as to indicate that the offensive acts are not likely to be repeated, the court, in the exercise of a discretion inherent in this type proceeding, may properly conclude that the necessity for the injunction no longer exists.

*Id.* at 494. The court added that "the application for an injunction is addressed to the sound discretion of the Chancellor." *Id.*[13]

---

12. At least one court has held that such statutes should be liberally construed to enable communities to protect themselves. *State ex rel. English v. Fanning*, 97 Neb. 224, 149 N.W. 413, 415 (1914).

13. *See also McCarthy v. Gaston Ridge Mill & Min. Co.*, 144 Cal. 542, 78 P. 7, 9 (1904) (upholding court's denial of injunction because defendant had voluntarily abated nuisance after commencement of action); *Commonwealth ex rel.*

Thus, we conclude that if a nuisance is found to exist at the time the complaint is filed but not at the time of trial, the trial court has the discretion not to issue an injunction or order of abatement. To this effect, the court should consider the good faith of the defendant, the likelihood of recurrence of illegal activity, and other circumstances of the case.[14]

### B. The Appropriate Burden of Proof

■ As to the appropriate burden of proof under AS 09.50.170–.240, the superior court stated:

> The evidence in this case is insufficient to show that a nuisance exists on the defendant premises on which The Chateau is operated. The Court has utilized the burden of proof of the preponderance of the evidence standard in making this decision. There is a strong argument that the burden of proof in this case should be the higher standard of clear and convincing evidence, however, it is clear that the evidence is insufficient under either the preponderance of the evidence standard or the clear and convincing proof standard.

On appeal, SAC argues that the appropriate burden of proof is a preponderance of the evidence. In response, Lot 3 seems to argue that this court should require a clear and convincing evidentiary standard under AS 09.50.170–.240.[15] This presents a question of law to which this court applies its independent judgment, adopting the rule of law that is most persuasive in view of precedent, reason and policy. Ford v. Municipality of Anchorage, 813 P.2d 654, 655 (Alaska 1991).

■ We hold that in regard to suits brought under AS 09.50.170–.240, the appropriate burden of proof is clear and convincing evidence. This ruling is supported by a number of decisions from other jurisdictions. In State ex rel. Miller v. Anthony, 72 Ohio St.3d 132, 139–40, 647 N.E.2d 1368, 1374 (1995), the Ohio Supreme Court held that clear and convincing evidence is the appropriate burden of proof under Ohio's nuisance

---

Attorney Gen. v. Brown, 239 Ky. 197, 39 S.W.2d 223, 227 (1931) ("an abatement by defendant subsequent to the filing of the action will not prevent the granting of the permanent injunction where it is not made to appear that the abatement was in good faith, and upon that issue the character of violations and the objects and things of which they consist may be taken into consideration") (citation omitted); Dunbar v. O'Brien, 117 Neb. 245, 220 N.W. 278, 279 (1928) (whether cessation of nuisance after filing of complaint defeats right to injunction "depends on the good faith of defendant" and the circumstances of the case); cf. United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953) ("the court's power to grant injunctive relief survives discontinuance of the illegal conduct," but the case may "be moot" and injunctive relief should not be granted "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated' ") (quoting United States v. ALCOA, 148 F.2d 416, 448 (2d Cir.1945)).

14. We also note that there must be repeated or continuous prohibited activity before a nuisance can be found to exist. See Southeastern Liquid Fertilizer Co. v. Chapman, 103 Ga.App. 773, 120 S.E.2d 651, 653 (Ga.App.1961) ("The whole idea of nuisance is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury."); State v. Glenny, 6 N.W.2d 241, 242 (Minn.1942) ("The commission of single or isolated disorderly or immoral acts on the premises does not constitute the place a disorderly house within the meaning of the penal laws."); Tenement House Dep't of City of New York v. McDevitt, 215 N.Y. 160, 109 N.E. 88, 89 (1915) ("To make the owner liable, it must appear that the building has been 'used' for the purpose of prostitution, and this imports, not an isolated act of vice, but some measure, even though brief, of continuity and permanence."); Starview, Inc. v. Oregon Liquor Control Comm'n, 15 Or.App. 11, 514 P.2d 898, 899 (Or.App.1973) ("To constitute the offense of 'maintaining' there must be some purpose of continuity in the use of the place for the proscribed illegal conduct.") (quoting People v. Holland, 158 Cal.App.2d 583, 322 P.2d 983, 986 (1958)); State ex rel. Carroll v. Gatter, 43 Wash.2d 153, 260 P.2d 360, 364 (1953) ("To sustain the application of the [nuisance abatement] act ... requires more than a showing that sporadic acts of prostitution occurred therein.").

15. We have articulated the difference between clear and convincing evidence and a preponderance of the evidence as follows:

> Where one has the burden of proving asserted facts by a preponderance of the evidence, he must induce a belief in the minds of the jurors that the asserted facts are probably true. If clear and convincing proof is required, there must be induced a belief that the truth of the asserted facts is highly probable.

Curran v. Mount, 657 P.2d 389, 391 n. 4 (Alaska 1982) (quoting Saxton v. Harris, 395 P.2d 71, 72 (Alaska 1964)).

abatement statute. In *State ex rel. Cox v. Taft*, 143 W.Va. 106, 100 S.E.2d 161 (1957), the court construed a public nuisance statute, stating "[t]he weight of authority appears to be that in a proceeding to abate a nuisance the proof necessary to establish the existence of a nuisance need not be convincing beyond a reasonable doubt, but there is respectable authority to the effect that such proof must be 'clear, convincing and satisfactory.'" *Id.* 100 S.E.2d at 165 (quoting 66 C.J.S. Nuisances § 127). And in *State v. Henderson*, 137 Ariz. 135, 669 P.2d 113, 113–14 (App. 1983), the court applied the clear and convincing evidence standard under a public nuisance statute similar to the one at issue in this case.[16] Moreover, this court has required clear and convincing evidence in other areas concerning real property such as reformation of a deed and abandonment of a mining claim. *D.M. v. D.A.*, 885 P.2d 94 (Alaska 1994); *Miscovich v. Tryck*, 875 P.2d 1293 (Alaska 1994).

Finally, the nature of the sanctions under the abatement statute supports our adoption of a clear and convincing standard of proof. The sanctions imposed under AS 09.50.210 are severe. All personal property used in the nuisance must be removed and sold, and the building used in the nuisance must be closed for one year.[17] Because the abatement law adopts severe civil remedies, we believe that the statute can be characterized as falling somewhere between a civil and a criminal statute. Thus, the standard of proof should be one which lies between the civil standard of a preponderance of the evidence and the criminal standard of beyond a reasonable doubt, that is, clear and convincing evidence.[18]

### C. Sanctions for Elstad's Discovery Violations

If a party fails to obey a discovery order, a trial court may impose sanctions under Civil Rule 37(b).[19] We review a trial

---

**16.** *See also Cherry Hill Tp. v. New Jersey Racing Comm'n*, 131 N.J.Super. 125, 328 A.2d 653, 664 (Law Div.) ("Plaintiffs, in charging a public nuisance, assumed the burden of establishing their cause of action by clear and convincing evidence."), *aff'd*, 131 N.J.Super. 482, 330 A.2d 600 (App.Div.1974), *cert. denied*, 68 N.J. 135, 343 A.2d 423 (1975); *Delaware Optometric Ass'n v. Sherwood*, 35 Del.Ch. 507, 122 A.2d 424, 427 (1956) ("Evidence sufficient to warrant the enjoining of a public nuisance must be clear and convincing."), *aff'd*, 36 Del.Ch. 223, 128 A.2d 812 (1957); *Sullivan County v. Filippo*, 64 Misc.2d 533, 315 N.Y.S.2d 519, 539 (N.Y.Sup. 1970) ("It is the rule in this state that a public nuisance must be established by clear evidence before the preventive remedy will be granted.").

**17.** Under AS 09.50.230, the building may be released to the owner before expiration of the one year period if the owner posts a bond and meets several other conditions.

**18.** Courts interpreting similar public nuisance abatement laws in other jurisdictions have split on whether such statutes are civil or criminal in nature. In *State ex rel. Haas v. Club Recreation and Pleasure*, 41 Or.App. 557, 599 P.2d 1194, 1196–97 (1979), *cert. denied*, 446 U.S. 982 (1980), the defendants challenged Oregon's nuisance abatement law as imposing criminal sanctions without the safeguards provided in criminal trials. The court rejected this argument stating that "rather than circumventing the criminal statute, the civil abatement statute serves as entirely different purpose, *i.e.* that of providing prospective equitable relief from continuation of

the nuisance." *Id.* 599 P.2d at 1198. However, in *State ex rel. Clemens v. ToNeCa, Inc.*, 265 N.W.2d 909, 914 (Iowa 1978), the court stated that even though Iowa's public nuisance abatement statute "is not a criminal statute, it is penal and must be strictly construed." The court added that "[a]ctions for prohibitory injunction, although premised in equity, are criminal in nature." *Id.* at 916. And in *Board of Supervisors of Los Angeles County v. Simpson*, 36 Cal.2d 671, 227 P.2d 14, 16 (1951), the court stated that "[p]roceedings under the red light [nuisance] abatement act are ... penal in nature." (Citations omitted.)

**19.** Alaska Civil Rule 37(b)(2) provides in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
> ....
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney

court's decision relating to the imposition of a discovery sanction for an abuse of discretion. *Underwriters at Lloyd's London v. The Narrows*, 846 P.2d 118, 119 (Alaska 1993). Where a trial court enters findings of fact in determining whether discovery sanctions are appropriate, we will not set aside such findings unless they are clearly erroneous. Alaska R.Civ.P. 52(a). "We will not declare a trial court's finding to be clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made." *Demoski v. New*, 737 P.2d 780, 784 (Alaska 1987).

### 1. *The Denial of the Establishment–Preclusion Order*

■■■ The superior court denied SAC's request for an order establishing that The Chateau was operating as a house of prostitution in 1987 and still operates as a house of prostitution and similarly denied its request to preclude Lot 3 from offering proof to the contrary. This ruling was based on the superior court's determination that SAC had failed to demonstrate that the information contained in the Rolodex files was unavailable by any other means. On appeal, SAC asserts that the superior court abused its discretion by failing to grant its request for an establishment-preclusion order.

■■■ Conclusive resolution of an issue against a party as a sanction for discovery violations should only be invoked in extreme cases. *Underwriters*, 846 P.2d at 119. Thus, before issuing an establishment-preclusion order which would have the practical effect of ending litigation, a trial court must: (1) find willfulness on the part of the non-complying party; (2) undertake a reasonable exploration of possible and meaningful alternatives to litigation-ending sanctions; and (3) determine that the information is not available by any other means. *Id.* at 119–20; *Sandstrom & Sons, Inc. v. State*, 843 P.2d 645, 647–48 (Alaska 1992). To this effect, we have stated as follows:

> For this reason, the trial court must find that the non-complying party "willfully"

advising that party or both to pay the reasonable expenses including the attorney's fees, caused by the failure, unless the court finds

violated the discovery order in question. "Willfulness" is defined as the "conscious intent to impede discovery, and not mere delay, inability or good faith resistance." We have held that before a court may impose litigation ending sanctions for discovery violations the record must clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal. Finally, the sanction must be "sufficiently related" to the discovery violation. We must determine "if the established issue is an 'element of the dispute that cannot be determined on the merits without disclosure of the evidence the court has ordered the party to produce.'"

*Underwriters*, 846 P.2d at 119–20 (citations omitted).

In support of its position, SAC points out that the superior court's October 1991 order included a finding that Elstad's discovery violations were willful. In addition, SAC argues that subsequent trial testimony showed that witness information was unavailable from any source other than the Rolodex files. The trial testimony to which SAC refers on appeal consists of Elstad's statements that she made no new entries in her Rolodexes after 1987, an opinion from SAC's president that the police have obtained few prostitution convictions since 1987, and a statement from one of the police officers that enforcing laws against prostitution was of the lowest priority.

However, even assuming that Elstad's discovery violation was willful, the testimony on which SAC relies does not demonstrate that the information was unavailable by any other means. In fact, as Lot 3 points out, SAC could possibly have obtained customer names by deposing Elstad herself. In addition, SAC could have identified customers through its "camera watch" program, an operation that had run periodically from 1987 to the time of trial in which SAC volunteers filmed customers entering suspected houses of prostitution, recorded the license plate numbers of vehicles parked in front of such establishments, and used the numbers to obtain some

that the failure was substantially justified or that other circumstances make an award of expenses unjust.

200 customer names through inspection of records at the Division of Motor Vehicles. Thus we conclude that the superior court's determination that SAC failed to show that the information was unavailable by any other means was not clearly erroneous. Based on the foregoing, we hold that the superior court did not abuse its discretion in rejecting SAC's request for the entry of an establishment-preclusion order against Lot 3.

■ Additionally, SAC appears to argue that the superior court's assessment of attorney's fees against Lot 3 is too lenient a sanction. Even in the circumstance where a violation of a discovery order is willful, we have not established a standard requiring trial courts to elevate a cost sanction to one of issue preclusion. *Koehring Mfg. Co. v. Earthmovers of Fairbanks, Inc.*, 763 P.2d 499, 508–09 (Alaska 1988). Rather, this court has stated only "minimum criteria that must be met when a court imposes issue preclusion." *Id.* at 508.

## 2. *The Attorney's Fees Sanction*

On cross-appeal, Lot 3 argues that the superior court abused its discretion in awarding $12,000 in attorney's fees to SAC as a Rule 37(b) discovery sanction because Elstad's conduct was not willful. In addition, Lot 3 argues that the $12,000 award improperly includes costs incurred by SAC in attempting to obtain the Rolodex files from the Anchorage Police Department, an effort that preceded any alleged discovery violations on Elstad's part.

■ We need not address Lot 3's argument that Elstad's conduct was not willful because an award of attorney's fees against Lot 3 is proper regardless of whether Elstad's behavior was willful. An award of costs and attorney's fees under Civil Rule 37(b)(2) is distinct from the Rule's list of enumerated sanctions:

> In lieu of any of the foregoing orders [or] in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses including the attorney's fees, caused by the failure, unless the court finds that the failure was

substantially justified or that other circumstances make an award of expenses unjust. Alaska R.Civ.P. 37(b)(2) (emphasis added).

Authorities construing the parallel Federal Rule of Civil Procedure 37(b)(2) consider willfulness to be relevant only as to the selection of the sanctions to be imposed, not to the imposition of attorney's fees and costs. 8A Charles A. Wright et al., *Federal Practice and Procedure* § 2289, at 672–74 (1994). For example, in *David v. Hooker, Ltd.*, 560 F.2d 412, 415 (9th Cir.1977), the court reviewed a sanction of attorney's fees and expenses imposed pursuant to a party's motion for sanctions for failure to comply with a discovery order. The court noted that the controlling statutory provision was Rule 37(b) and not Rule 37(a). *Id.* at 419. Then, relying on the Notes of the Advisory Committee to Rule 37, the court held that willfulness is not a necessary element for the imposition of expenses and attorney's fees under Rule 37(b). *Id.* Likewise, we hold that willfulness is not required for a sanction of attorney's fees and expenses under Alaska Civil Rule 37(b)(2).

■ Second, Lot 3 argues that the award of $12,000 in costs and attorney's fees improperly includes costs incurred by SAC in attempting to obtain the Rolodex files from the Anchorage Police Department. The superior court ordered Lot 3 to pay "the reasonable attorney fees and costs incurred by plaintiff from the day it subpoenaed the police officer to get the rolodex information until June 19, 1991...." Counsel for SAC submitted an affidavit and a supplemental affidavit of attorney's fees incurred by SAC from the time the first subpoena was issued for the police sergeant who had custody of the Rolodex files. The total amount of attorney's fees was $16,426.85. The superior court subsequently ordered Lot 3 to pay SAC $14,000 in attorney's fees. The superior court then reduced this order to a judgment in the amount of $12,000. The judgment states in part as follows:

> Although the exact dollar amount at issue as a result of the defendant's (Elstad) opposition to plaintiff's submission of fees and costs are well-taken in part, even careful review by the court makes exact calcu-

lation nearly impossible on an activity per minute basis.... Consequently, this court has made an activity by activity estimation. Lot 3 then requested the court to reconsider the $12,000 award of attorney's fees. Lot 3 specifically objected "to all of the fees sought prior to October 24, 1988, when Ms. Elstad was served with a subpoena for her deposition." The superior court agreed to consider Lot 3's objections.[20] Then, the superior court again reduced the award of attorney's fees in the amount of $12,000 to judgment. However, the superior court failed to make specific findings as to whether the $12,000 award includes fees incurred prior to October 24, 1988, when Elstad was served with a subpoena for her deposition and, if so, why the award includes such fees.

While we agree that an exact calculation of attorney's fees is extremely difficult, we conclude that the superior court erred in failing to make findings in support of the $12,000 award. On remand, the superior court should make specific findings as to whether the $12,000 award includes fees incurred by SAC in attempting to obtain the rolodex files from the Anchorage Police Department prior to October 24, 1988, and if so, to eliminate such fees from its award.

### D. Evidentiary Rulings

■ On appeal, SAC argues that the superior court erred in excluding any evidence regarding L.H.'s conviction for assignation. On cross-appeal, Lot 3 argues that the superior court erred in permitting police officers to testify as expert witnesses as to whether The Chateau was operating as a house of prostitution. We review a trial court's ruling relating to the admissibility of evidence, including the admissibility of expert testimony, for an abuse of discretion. *In re D.J.A.*, 793 P.2d 1033, 1035–36 n. 2 (Alaska 1990); *Patri-*

*cia R. v. Sullivan*, 631 P.2d 91, 99 (Alaska 1981).

### 1. Exclusion of L.H.'s Conviction for Assignation

■ As a result of the October 1987 raid, L.H., an employee of The Chateau, was tried and convicted of assignation.[21] After receiving a suspended imposition of sentence, L.H.'s conviction was subsequently set aside upon her successful completion of a probation period. SAC sought to offer the conviction to establish that The Chateau was operating as a house of prostitution in October 1987. The superior court excluded the conviction due to the lack of privity between L.H. and Lot 3. On appeal, SAC challenges the superior court's exclusion of L.H.'s conviction. In response, Lot 3 argues that this court should uphold the exclusion of L.H.'s conviction because it was subsequently set aside, and because of the lack of privity between L.H. and Lot 3.

We first address the question of whether a conviction that has been set aside may be introduced as evidence in a subsequent proceeding.[22] Lot 3 relies on *Wickham v. State*, 844 P.2d 1140 (Alaska App.1993), in support of its argument that L.H.'s conviction should be excluded because it was subsequently set aside. In *Wickham*, the court of appeals held that a conviction set aside under AS 12.55.085 cannot be used for impeachment purposes in a future proceeding. *Id.* at 1144. However, the use of a conviction for impeachment purposes differs from the use of a conviction as relevant evidence that a crime or event occurred. The court's holding in *Wickham* was based on its conclusion that the set aside provisions of AS 12.55.085 require a substantial showing of rehabilitation, and that evidence of a conviction is inadmissi-

---

20. To this effect, the superior court stated as follows:

   For reasons not articulated in the record, the defendant did not clearly state, with specificity, the objections that she had to the plaintiff's request for an award of attorney fees when she opposed the plaintiff's motion. Instead, she waited until after the court ruled and then as a motion for reconsideration, she was finally able to articulate the fees and activity to which she specifically objects.

21. For definition of "assignation," see note 1, supra.

22. Alaska's set aside statute, AS 12.55.085(e), provides as follows:

   Upon the discharge by the court without imposition of sentence, the court may set aside the conviction and issue to the person a certificate to that effect.

ble under Alaska Rule of Evidence 609(d)(2) if an offender has been rehabilitated. *Id.* at 1142–44. Because the court's decision to exclude the conviction was based on the text of Evidence Rule 609(d)(2), *Wickham* does not apply to this case.

■ A set aside does not mean that the crime, and the events surrounding the crime, never occurred. In *City of St. Paul v. Froysland*, 310 Minn. 268, 246 N.W.2d 435, 438 (Minn.1976), the Minnesota Supreme Court stated that "the dismissal of a charge following the period of stayed imposition of sentence is in the nature of a pardon, not a declaration of innocence." Thus, there is no reason why a set aside should render a judgment of conviction inadmissible as evidence that the crime occurred. Moreover, the Model Penal Code provides that a conviction which has been discharged and set aside may still be introduced as relevant evidence in a future proceeding. Model Penal Code § 301.5 and explanatory note (1985). Based on the foregoing, we hold that a conviction which has been set aside may be introduced as evidence in a future proceeding for certain purposes.[23]

However, we must still determine whether the criminal conviction of a non-party following trial may be admitted at a subsequent civil trial as evidence of the facts on which the judgment rests. This is a question of first impression in Alaska. In *Scott v. Robertson*, 583 P.2d 188 (Alaska 1978), this court held that the criminal conviction of a party is admissible in a subsequent civil trial where: (1) the prior conviction is for a serious criminal offense; (2) the defendant in fact had a full and fair hearing; and (3) it is

shown that the issue on which the judgment is offered was necessarily decided in the previous trial.

*Id.* at 191–92 (footnotes omitted). This court further held that such convictions should be admitted as conclusive proof of the facts necessarily determined. *Id.* at 193. However, *Scott* applies to the admission of a criminal conviction of a party.

■ Lot 3 argues, and the superior court ruled, that L.H.'s conviction is not admissible under *Scott* due to the lack of privity between L.H. and Lot 3. The rule of privity "states that the only persons *bound* by a judgment are those who are parties to the action or in privity with the parties." *Pennington v. Snow*, 471 P.2d 370, 375 (Alaska 1970). However, SAC sought to introduce the conviction as evidence of the facts on which it rests and not as conclusive proof of those facts. Thus, privity is not required if the conviction is admissible as evidence.[24]

Several federal courts have admitted prior criminal judgments against a non-party to the original suit as evidence of the facts on which the judgment rests. For example, *Schwartz v. United States*, 582 F.Supp. 224 (D.Md.1984), involved a dispute between Schwartz and the federal government over ownership of corporate stock. To prove that Schwartz did not own the stock, the government used the special verdict from a prior criminal trial in which Schwartz's associate, Irvin Kovens, had been convicted. *Id.* at 227–28. The jury in that trial found that Kovens owned the stock. *Id.* at 225. The

**23.** In *Journey v. State*, 895 P.2d 955 (Alaska 1995), we considered whether expunction is a necessary component of a set aside order under AS 12.55.085(e). We noted that while the collateral consequences of a set aside conviction should be limited, records of a set aside conviction can be used in certain circumstances. *Id.* at 959.

**24.** This court has previously stated that
[B]efore privity may be found to exist, the non-party must have notice and an opportunity to be heard; the procedure must insure the protection of the rights and interests of the non-party, and he must in fact be adequately represented by the parties.

*Pennington,* 471 P.2d at 375–76. These requirements are not met in this case. In *O'Connor v. O'Leary,* 247 Cal.App.2d 646, 56 Cal.Rptr. 1 (1967), the California Court of Appeal considered a case in which an employee of a drive-in theater who was acting within the scope of his employment under the doctrine of *respondeat superior* stabbed someone on theater premises and was subsequently convicted of involuntary manslaughter. *Id.* 56 Cal.Rptr. at 2–3. The court held that the theater was not in privity with the employee for purposes of applying the doctrine of collateral estoppel to the criminal conviction. *Id.* 56 Cal.Rptr. at 3.

court agreed with Schwartz that the finding in the previous trial could not estop him from asserting ownership of the stock because he had not been a party to that trial; however, the court admitted the jury's special verdict into evidence against Schwartz. *Id.* at 227–28; *see also* Hiroshi Motomura, *Using Judgments as Evidence*, 70 Minn.L.Rev. 979, 1012 (1986).

However, in *Schwartz* the court relied in part upon Federal Rule of Evidence 803(22) in admitting the judgments.[25] The Commentary to Alaska Rule of Evidence 803 notes that the Alaska rule omits an exception for criminal judgments like that contained in Federal Rule 803(22). To this effect, the Commentary states as follows:

> If a judgment of guilty in a criminal case, which follows proof beyond a reasonable doubt, is to have impact in subsequent cases, the impact should be by way of collateral estoppel, not by admitting the previous judgment. The judgment tells the second trier of fact nothing; that trier will either disregard it or defer to it, neither of which tactic is intended by the Federal Rule.... But the fact remains that the trier of fact in the second case cannot know how to use the first finding. There is no reason to adopt a rule that can only confuse the trial process.

Alaska Evidence Rules Commentary, Rule 803.

Thus, the Alaska Rules of Evidence articulate a policy against admitting criminal judgments as evidence. Moreover, in *Scott* this court noted Professor McCormick's concerns that parties will tend to rely too heavily on the prior conviction and will not introduce sufficient evidence at the second trial. *Scott*, 583 P.2d at 191 n. 11 (citing McCormick on Evidence § 318, at 739 (2d ed. 1972)). Based on the foregoing, we hold that the criminal conviction of a non-party following trial is not admissible as evidence in a subsequent civil proceeding.

*2. Admission of Police Officers' Expert Opinions*

Prior to trial Lot 3 filed a motion *in limine* seeking an evidentiary ruling that no Anchorage police officer should be permitted to testify as an expert witness regarding whether The Chateau was operated as a house of prostitution. The superior court denied the motion. One of the police officers who participated in the October 1987 raid testified that in his opinion The Chateau was a place where prostitution had just occurred, but that he had formulated no opinion as to whether The Chateau was a house of prostitution. Another officer who had participated in the raid testified that in his opinion The Chateau was operating as a house of prostitution at that time. On appeal, Lot 3 challenges the superior court's decision to allow the police officers to testify as experts. Lot 3 specifically argues that police officers do not qualify as expert witnesses under the criteria of Alaska Rule of Evidence 702, and that such testimony invaded the province of the fact finder.

Alaska Rule of Evidence 702(a) provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In the present case, the superior court permitted police officers to express specific opinions as to whether The Chateau was operating as a house of prostitution. At least one authority concludes that while experts may provide general standards, criteria, or descriptions of social frameworks, the helpfulness standard requires that experts "stop short of stating their own conclusions on [points that] the jury is at least equally capable of [determining]." 3 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal*

---

**25.** Federal Rule of Evidence 803(22) provides in part that the rule against hearsay does not require exclusion of "evidence of a final judgment,

entered after a trial ... adjudging a person guilty of a crime punishable by death or imprisonment

*Evidence* § 350, at 628 (1994). Thus, while courts have allowed expert testimony as to patterns of conduct in drug trafficking,[26] criteria for determining the adequacy of a warning,[27] and principles of handwriting analysis,[28] courts have been reluctant to let experts state their own conclusions regarding such matters. Rather, courts prefer to let a jury apply general standards supplied by experts to the specific facts of a case in order to reach its own conclusion.[29]

■ We conclude that the officers' specific opinions as to whether The Chateau was operating as a house of prostitution do not meet the criteria for scientific, technical, or other specialized knowledge which would assist the trier of fact as required by Evidence Rule 702(a). Thus, we hold that the superior court abused its discretion in permitting the police officers to express their opinions as to whether The Chateau was operating as a house of prostitution.[30]

### E. SAC's Status as a Public Interest Litigant

■ Because we reverse the superior court's judgment in favor of Lot 3 as to the merits of this case, we vacate the court's award of attorney's fees and costs. However, because the issue may arise again on remand, we address SAC's argument that it is a public interest litigant.

■ The superior court concluded that SAC is not a public interest litigant and awarded $25,000 in attorney's fees and $3,782 in costs to Lot 3 as the prevailing party pursuant to Civil Rule 82.[31] On appeal, SAC argues that the superior court erred in concluding that SAC is not a public interest litigant.[32]

■ In *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974), this court recognized a public interest exception to Civil Rule 82 and held that "it is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of

in excess of one year, to prove any fact essential to sustain the judgment."

26. In *United States v. Brown*, ·776 F.2d 397, 400 (2nd Cir.1985), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986), the court concluded that a police officer properly testified that street drug sales in Harlem generally involved the use of a steerer. However, the court stated that "there is something rather offensive in allowing an investigating officer to testify not simply that a certain pattern of conduct is often found in narcotics cases, leaving it for the jury to determine whether the defendant's conduct fits the pattern, but also that such conduct fitted that pattern...." *Id.* at 401.

27. In *Harris v. Pacific Floor Mach. Mfg. Co.*, 856 F.2d 64, 67 (8th Cir.1988), the court permitted the expert to explain the criteria he would use to judge the adequacy of a warning, but "ruled that the jury could then apply the criteria to the facts of the case for itself, without the assistance of an expert's opinion."

28. In *United States v. Fleishman*, 684 F.2d 1329, 1337 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982), the court permitted the expert to provide the jury with an extensive review of the principles of handwriting analysis, but left the jury to apply the principles to the facts of the case in order to reach their own conclusion as to the author of a note.

29. *Harris*, 856 F.2d at 67–68; *Brown*, 776 F.2d at 401; *Fleishman*, 684 F.2d at 1336–37.

30. SAC argues that the police officers' opinions are admissible under Alaska Rule of Evidence 704 which provides as follows:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

However, under Rule 704 an expert's opinion on an ultimate issue must still be of assistance to the trier of fact. *Wilson v. State*, 669 P.2d 1292, 1297 (Alaska 1983). Since the police officers' opinion testimony does not meet the requirements for expert testimony in the first place, the fact that it embraces ultimate issues cannot make it admissible.

31. In this regard the superior court found in relevant part as follows:

Plaintiff is not a public interest litigant. It does not meet the third and fourth criteria for public interest status. Specifically, this lawsuit could have been brought by a governmental entity and not just a private party. Also, the plaintiff had sufficient economic incentive to file the lawsuit even if the action involved only narrow issues lacking general importance.

32. We review a trial court's determination as to a party's status as a public interest litigant for an abuse of discretion. *Citizens Coalition for Tort Reform, Inc. v. McAlpine*, 810 P.2d 162, 171 (Alaska 1991).

genuine public interest before the courts." The public interest exception to Civil Rule 82 is designed to encourage plaintiffs acting as private attorneys general to bring issues of public interest to the courts when such issues might otherwise not be brought. *Anchorage v. McCabe*, 568 P.2d 986, 990 (Alaska 1977). A litigant must satisfy the following four criteria to be deemed a public interest litigant:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance? ·

*Citizens Coalition*, 810 P.2d at 171.

SAC brought this action to abate houses of prostitution in the Spenard area. The suppression of prostitution and related activities is supported by the policies and laws of this state. AS 09.50.170–.240; AS 11.66.100–.150. We therefore conclude that this action was designed to effectuate the strong public policy of suppressing prostitution in the Anchorage area. Thus, we hold that the first criterion is satisfied.

Those who live in close proximity to the premises, those who drive by on a regular basis, and the community as a whole will benefit if SAC is successful in closing houses of prostitution. We therefore conclude that numerous people will benefit from the successful outcome of SAC's lawsuit. Thus, we conclude that the second criterion is met.

As to the third criterion, this action could have arguably been brought by the Municipality of Anchorage or the State of Alaska. However, David Erlich, the president of SAC, averred in an affidavit that law enforcement action had not been successful in closing alleged houses of prostitution, and that the Municipality of Anchorage had refused to initiate an action to close the houses of prostitution in the Spenard area. Moreover, Sergeant Mark O'Brien of the Anchorage Police Department, who was supervisor of the General Investigation Unit responsible for investigating prostitution, gambling and street level drug trafficking, testified that prostitution was the Unit's lowest priority. He stated that he was instructed that his priorities were to focus on drugs and crack cocaine and to not work on prostitution. Thus, for all practical purposes, only a private party could have been expected to bring this suit. We therefore conclude that the third criterion is satisfied.

Finally, as to the fourth criterion, in his affidavit David Erlich stated that SAC is a non-profit corporation. One of SAC's purposes is to improve the Spenard neighborhood by its efforts to bring about the closing of houses of prostitution. It is apparent that SAC will not receive any direct financial benefit from the successful outcome of this litigation. While the members of SAC may benefit indirectly based on improved property values in their neighborhood, such minimal economic interests cannot destroy a litigant's capacity to satisfy the fourth criterion. We therefore hold that SAC would not have a sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance. Thus, the fourth criterion is satisfied. Based on the foregoing, we hold that the superior court erred in concluding that SAC is not a public interest litigant.

## III. *CONCLUSION*

We AFFIRM the superior court's order denying SAC's motion for an establishment-preclusion order and AFFIRM the superior court's exclusion of L.H.'s conviction for assignation. We REMAND the superior court's discovery sanction award of $12,000 in costs and attorney's fees against Lot 3 for specific findings as to whether the award includes fees incurred prior to October 24, 1988, when Elstad was served with a subpoena for her deposition and, if so, why the award includes such fees. We REVERSE the superior court's admission of the police officers' expert opinions, and REVERSE the superior court's determination that SAC is not a public interest litigant.

Finally, we REVERSE the judgment of the superior court and REMAND for redetermination consistent with this opinion as to whether Lot 3 should be abated under AS 09.50.210 and whether an injunction should be issued under AS 09.50.180.[33] As to these issues the determinative questions are: (1) whether a nuisance existed by clear and convincing evidence at the time SAC filed its complaint; and (2) if so, whether the equitable factors discussed earlier warrant injunctive relief. As to the first question, we note the superior court previously concluded that "in October 1987 The Chateau was a business that included prostitution as one of its primary services." Thus, on remand the superior court may give the parties the option of offering further evidence, may order *sua sponte* the further taking of evidence, shall enter such additional findings of fact and conclusions of law as are appropriate in the circumstances, and shall undertake such further proceedings it deems appropriate not inconsistent with this opinion.

**33.** Based on our construction of AS 09.50.170–.240, we need not address SAC's argument that it is entitled to relief under the common law or its contention that its motion for additional findings of fact was improperly denied.